[No. 1,033.]

# W. C. GASS, APPELLANT, *v.* J. C. HAMPTON, RESPONDENT.

TRANSFER OF CERTIFICATES OF MINING STOCK—WHEN TRUE OWNER IS
ESTOPPED FROM ASSERTING TITLE.—G. deposited with the Bank of
Virginia certain certificates of mining stock which were issued, in the
usual form, in the name of different parties, and indorsed by them, as
trustees, to be held as collateral security for any indebtedness that then
existed, or might thereafter be incurred, by reason of any purchase or
sale of stock that the bank might make for G. Subsequently the bank,
without the knowledge or authority of G., delivered those certificates of
stock, with others, to H. as collateral security for the payment of a loan
made by him to the bank and for any further advances that might be
made. H. had no knowledge that G. was the owner of the stock: *Held*,
that G. could not recover the value of these certificates of stock against
H., who received the same in good faith, believing them to be the prop-
erty of the bank.
IDEM—INDICIA OF OWNERSHIP.—A party who places another in a position to
enable him to commit a fraud, should suffer the loss rather than an in-
nocent person who deals with him on the faith of the usual *indicia* of
ownership with which the true owner has invested him.

APPEAL from the District Court of the First Judicial Dis-
trict, Storey County.

The facts sufficiently appear in the opinion.

*F. M. Huffaker* and *M. N. Stone*, for Appellant:

I. The stock in controversy is personal property, and the
owner can follow it and recover the possession of it where-
soever found. (1 Hittell's Code and Stats. Cal., sec. 5324;
2 Comp. L., sec. 3397; *Mechanics' Bank* v. *N. Y. & N. H.
R. R. Co.*, 13 N. Y. 623; *Weston* v. *Bear River M. Co.*, 5
Cal. 189; *Hawly* v. *Brumagin*, 33 Id. 399; *Atkins* v. *Gamble*,
42 Id. 99; *Brewster* v. *Levin*, Id. 147; *Boylen* v. *Huguet*, 8
Nev. 353; *Bercich* v. *Marye*, 9 Id. 315; *Brookman* v. *Roths-
child*, 6 Eng. Ch. 153; *Pars. Cont.*, note.)

II. The bank held the stock as agent or broker of plaint-
iff, consequently with no power of disposition of it, except
by direction of plaintiff, therefore no authority to pledge it
for a debt of its own, and any such pledge conveyed no title
to the pledgee as against the owner. (Dunlap's Paley on
Agency, 213; *Patterson* v. *Tash*, 2 Stra. 1178; *Daubigny* v.

*Duval,* 5 T. R. 604; *De Bouchout* v. *Goldsmid,* 5 Ves. Jr. 211; *Urquhart* v. *McIver,* 4 Johns. 103; *Van Amringe* v. *Peabody,* 1 Mason, 440; *Kinder* v. *Shaw,* 2 Mass. 398; *Odiorne* v. *Maxcy,* 13 Id. 181; *Jarvis* v. *Rogers,* 15 Id. 398; *Newbold* v. *Wright,* 4 Rawl. (Penn.) 195; *Queiroz* v. *Truman,* 3 Barn. & Cress. 342; *Stevens* v. *Wilson,* 6 Hill, 513; *Learoyd* v. *Robinson,* 12 M. & W. 745; *Rodriguez* v. *Heffernan,* 5 Johns. Ch. 429; Story on Bailments, secs. 325–6; *Hoffman* v. *Noble,* 6 Metc. (Mass.) 74; *Warner* v. *Martin,* 11 How. (U. S.) 209; *Holton* v. *Smith,* 7 N. H. 446; Story on Agency, sec. 113, note 5; *Beach* v. *Forsyth,* 14 Barb. 499; *Blackman* v. *Green,* 24 Vt. 17; *Benny* v. *Pegram,* 18 Mo. 191; *Fahnestock* v. *Baily,* 3 Metc. (Ky.) 48; 2 Kent's Com. 625; Edwards on Bailm. 214; *McCombie* v. *Davies,* 6 East, 538; *Wright* v. *Solomon,* 19 Cal. 64; *Putnam* v. *Lamphier,* 36 Id. 158; *Hamilton* v. *Kennedy,* 59 Tenn. 476; *Everett* v. *Saltus,* 15 Wend. 474.)

III. The Bank of Virginia having possession of this stock had no authority to dispose of it to another, since possession alone does not confer title to personal property, being no indication of ownership. (*Brewster* v. *Sime,* 42 Cal. 147; *McNeil* v. *Tenth Nat. Bank,* 46 N. Y. 329; *Covill* v. *Hill,* 4 Denio, 323; *Ballard* v. *Burgett,* 40 N. Y. 314; *Cushman* v. *Thayer Man. Co.,* 76 Id. 370, *et seq.; Weaver* v. *Barden,* 49 Id. 287.)

IV. Defendant receiving this stock of the manager of the Bank of Virginia, and out of the usual course of the business of the bank, which was to buy and sell stock for its customers in the San Francisco market, acquired no title to it as against the plaintiff, the owner. (*Saltus* v. *Everett,* 20 Wend. 276; *Dame* v. *Baldwin,* 8 Mass. 518; *Wheelwright* v. *Depeyster,* 1 Johns. 479; *Hasach* v. *Weaver,* 1 Yeates, 478; *Easton* v. *Worthington,* 5 Serg. & R. 130; *Browning* v. *Magill,* 2 Har. & J. 308; *McGrew* v. *Browder,* 7 Mart. (La.) 17; *Roland* v. *Gundy,* 5 Ohio, 202; *Lance* v. *Cowan,* 1 Dana (Ky.), 195; *Ventress* v. *Smith,* 10 Pet. 161; *Hoffman* v. *Carow,* 22 Wend. 318; *Putnam* v. *Lamphier,* 36 Cal. 158; *Treadwell* v. *Davis,* 34 Id. 606; *Lyle* v. *Barker,* 5 Binn. 457; *Heyden & Smith's case,* 6 Co. 486; *Ingersoll* v. *Vanbokkelin,* 7 Cow. 670; *Pomeroy* v. *Smith,* 17 Pick. 85.)

V. The judgment in this action deprives the plaintiff of his property without his consent and without due process of law, and is therefore erroneous. (*Covill* v. *Hill*, 4 Denio, 327; *Silsbury* v. *McCoon*, 4 Id. 332; *Wilson* v. *Little*, 2 Coms. 443.)

VI. The defendant took this property from an agent, out of the usual course of business of said agent, which defendant at the time knew or was put upon such inquiry as to charge him with notice. (*Berry* v. *Anderson*, 22 Ind. 36; *Davenport* v. *Peoria Ins. Co.*, 17 Iowa, 276.)

VII. The principle of estoppel *in pais*, on which the case of *Stone* v. *Marye* was decided, does not apply to this case, and the plaintiff has done no act by which defendant was induced to act with reference thereto, and on the faith of which he did act, which is absolutely essential to constitute an estoppel, which can never be invoked in favor of one who deals with an agent out of the usual course of business of such agent. (*Holbrook* v. *N. J. Zinc Co.*, 57 N. Y. 616; Bigelow on Es. 345, 437; *People* v. *Brown*, 67 Ill. 435; *Stevens* v. *Dennett*, 51 N. H. 324; *Cushman* v. *Thayer M. Co.*, 76 N. Y. 370.

*C. H. Belknap*, for Respondent:

The plaintiff having allowed the Bank of Virginia to appear as the true owner of the certificates of stock, is estopped from asserting his title to the same as against defendant, who had no knowledge of his claim. (*Brewster* v. *Sime*, 42 Cal. 139; *Thompson* v. *Toland*, 48 Id. 99; *Crocker* v. *Crocker*, 31 N. Y. 507; *McNeil* v. *Tenth Nat. Bank*, 46 Id. 325; *Moore* v. *Metropolitan Nat. Bank*, 55 Id. 46; *Holbrook* v. *N. J. Zinc Co.*, 57 Id. 616; *Stone* v. *Marye*, 14 Nev. 362.

By the Court, HAWLEY, J.:

This is an action of claim and delivery for certain mining stocks. The material facts are as follows: On or about the twelfth of August, 1879, Gass deposited with the Bank of Virginia, a corporation engaged in the business of buying and selling mining stocks on commission, certain certificates of stock, of which he was the owner, for safe keeping.

These certificates of stock were in the usual form, and were issued in the name of different parties, and indorsed by them as "trustees." Within a short time after the deposit was made, Gass became indebted to the bank for money loaned and advanced, and for interest and expenses in the purchase and sale of mining stocks, and requested the bank to hold the certificates as collateral security for the payment of any indebtedness that then existed, or might thereafter accrue to the bank, by reason of any purchase or sale of stock that he might desire to make.

On the fourteenth of August, 1879, the firm of J. C. Hampton and Co., of which defendant is a member, advanced and loaned to the Bank of Virginia, in addition to other money then due from it, the sum of two thousand dollars, and in consideration of said loan the bank, without the knowledge or authority of Gass, within a day or two thereafter, delivered the stock, which belonged to Gass, to J. C. Hampton & Co., as collateral security for the payment of said loan and the other indebtedness then due, or by reason of their business transactions of like character thereafter to become due.

At the time of these transactions it was the custom in Nevada and in California to deal in mining stocks and transfer certificates by indorsement in the manner in which the certificates in question were indorsed.

Neither Hampton nor the firm of which he is a member had any notice or knowledge of the ownership or claim of Gass to said certificates of stock until some time after the failure of the bank, when Gass tendered to Hampton the amount he owed the bank, and demanded the stock, and upon the refusal of Hampton to deliver it this suit was brought for its recovery. At the time the demand was made the certificates were held by J. C. Hampton & Co. as security for the indebtedness of the bank to said firm, which exceeded the value of all stocks held by them, and exceeded the amount that could be realized by a sale of the stocks.

Upon the facts, as found by the court, and sustained by the evidence, we are unable to distinguish this case from

that of *Stone* v. *Marye*, 14 Nev. 362, in so far as the application of the legal principles therein announced are concerned.

Hampton was a stranger to the business operations of the bank. He made no inquiry, and the law did not, upon the facts presented, require him to make any inquiry, whether it was depositing its customers' stocks or its own. The bank had the right to pledge its own stocks for its individual debt, and a transaction of this kind is not outside of the usual course of business. There was nothing in the mere fact of depositing this stock as collateral security with Hampton & Co. to put them upon inquiry as to the ownership of the stocks. There was nothing upon the face of the certificates to raise a suspicion that they were not the property of the bank. There is nothing in the record to show that Hampton & Co., or Hampton, knew, or ought to have known, that the bank did not own the stock, or that Gass, or any person other than the bank, did own it. The record does, affirmatively, show that Hampton & Co. received the certificates in good faith, without any notice or knowledge of the claim or ownership of Gass.

When Gass deposited his stock he knew, or ought to have known, that it was the custom of brokers to transfer certificates of stock that were indorsed in the manner his were by delivery.

By his own voluntary act he left his certificates of stock with the bank in such a condition as to pass by delivery, with nothing on their face to indicate that he had any interest in them, or that they were not the property of the bank, and thereby enabled it to treat the certificates as its own, and to wrongfully obtain the loan of money thereon from parties innocent of the true state of the title. He clothed the bank with such an apparent ownership as to enable it to mislead the public and to hold itself out to the world as the true owner, and thereby to defraud innocent persons dealing with it in good faith.

Under these circumstances the case comes clearly within the principle, announced in *Toland* v. *Thompson*, 48 Cal. 112, that "the party who places another in a position to

enable him to practice the fraud should suffer the loss rather than an innocent person who deals with him on the faith of the usual *indicia* of ownership with which the true owner has invested him."

If Gass had desired to protect his rights against the use which the bank might make of his stock, he should—as he readily could—in some proper method, have placed it out of the bank's power to deal with the stock as its own. It is to be presumed, from his acts, that he selected the bank because he had confidence in its managers, and did not believe they would wrongfully use his property. He reposed his confidence in the bank. To it he must look for redress. He can not now, upon any principle of equity, be allowed to hold an innocent party responsible for the loss which resulted to him from the improper and wrongful act of the party in whom he confided.

Counsel for appellant have cited numerous authorities to show that certificates of mining stock are personal property, and non-negotiable; that no person can transfer any other interest in personal property than he, or his principal for whom he acts, is possessed of; that no person can be divested of his property without his own consent, and that an honest purchaser, under a defective title, can not hold the property against the true owner. As a general proposition these "fundamental principles" are unquestionably correct. The bank had no right to hypothecate the stock without the consent of Gass, and it must be conceded that as a general rule, applicable to personal property other than negotiable securities, the vendor or pledgor can convey no greater right or title than he has. This principle applies to transfers from one party to another where no other element intervenes. But this rule does not, as was said by the court of appeals in *McNeil* v. *The Tenth National Bank*, 46 N. Y. 329, "interfere with the well-established principle that where the true owner holds out another, or allows him to appear, as the owner thereof, or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title

or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance." The fact, apparently relied upon by appellant's counsel, that the stock "did not stand on the books of the company in the name of the bank of Virginia, nor had the bank of Virginia title by assignment from Gass, the owner," "nor did the bank have any power of attorney from plaintiff, the owner, to have the same transferred or to dispose of it in any way," or that "Gass did not deposit this stock with the bank of Virginia, to secure an account he owed it, with a blank assignment and power of attorney signed by him," do not distinguish this case in principle, from those cited in *Stone* v. *Marye.*

The bank had the same absolute power to hypothecate the certificates, indorsed by the respective trustees to whom the same were issued, as it would have had if the stock had been issued in its own name, or to Gass, and by him assigned to the bank. In the condition in which the certificates were left with the bank, it could, at any time, have caused the certificates to be transferred on the books of the respective corporations in its own name, and any purchaser or pledgor could have done the same. By the act of Gass the bank was clothed with the usual *indicia* of the ownership of mining stock, and the real point of inquiry here, as it was in *Stone* v. *Marye*, is whether the plaintiff did confer upon his brokers such an apparent title to, or power of disposition over, the certificates of stock as to estop him from asserting his own title as against parties who took *bona fide* through the brokers.

The cases of *Brewster* v. *Sime*, 42 Cal. 139; *Thompson* v. *Toland, supra*, and *McNeil* v. *The Tenth National Bank, supra*, upon the authority of which *Stone* v. *Marye* was decided, were cases concerning stock transactions that can not, in the application of legal principles, be distinguished from the case at bar.

The same principle was applied in the Pennsylvania Rail-

road Company's appeal by the supreme court of Pennsylvania. The executrix of an estate took certain certificates of stock, with blank power of attorney signed on the back, in the railroad company, and deposited them for safe-keeping with one Creeley, who, at that time, was a lawyer in good standing, and was·acting as the legal adviser of the executrix, and had been for several years collecting the dividends of the estate.

Creeley secured a loan for himself from an innocent party, and pledged the certificates of stock as collateral security therefor, without the knowledge or consent of the executrix. The loan was not paid, and the party who held the certificates of stock as collateral security took them to the office of the railroad company and had the stock transferred to himself, and he subsequently disposed of the same. The executrix sought to hold the railroad company liable upon the ground that it was negligent in not making inquiries as to the true ownership of the stock. The court, in deciding the questions raised upon this branch of the case, said:

"But there certainly was negligence on the part of the appellee. As executrix she placed the certificates in the hands of Creeley, as her attorney, with the blank powers indorsed uncanceled. Thus by her act he was enabled to commit this fraud. The equities of the respective parties are not equal. Where one of two parties, who are equally innocent of actual fraud, must lose, it is the suggestion of common sense, as well as of equity, that the one whose misplaced confidence in an agent or attorney has been the cause of the loss shall not throw it on the other. As Judge King has well expressed this principle in *The Bank of Kentucky* v. *Schuylkill Bank* (1 Pars. Eq. 248): 'The true doctrine on this subject is that, where one of two innocent persons is to suffer from the tortious act of a third, he who gave the aggressor the means of doing the wrong must alone bear the consequences of the act.' The appellee in this case selected the attorney. She had entire confidence in him. She placed these certificates, with the blank powers, in his hands. He proved unworthy of the trust reposed in him.

He perpetrated a gross fraud, by which he converted this property to his own use. That he was an attorney-at-law in good standing does not help her case. He added to the crime of which he was guilty that of moral perjury by the violation of his official oath. On what principle of equity can she be allowed to throw off from herself on to the appellants the loss which has resulted from the dishonesty of her own agent? This important element in the case was entirely overlooked by  *  *  *  the court below; and we think, applying it to the undisputed facts of the case, the appellee's bill as to the appellants ought to have been dismissed." (86 Penn. St. 83.)

The facts do not show, as appellant claims, that the certificates in controversy were delivered to Hampton & Co. as security for the payment of an antecedent debt due from the bank to them, and the authorities cited upon this point have no application to this case.

The judgment of the district court is affirmed.

BELKNAP, J., having been of counsel at the trial of this cause in the lower court, did not participate in the foregoing decision.