[No. 2519]

# THOMAS S. ROBINSON, APPELLANT, v. GOLDFIELD MERGER MINES COMPANY (A CORPORATION), DEFENDANT; CATLIN & POWELL COMPANY (A CORPORATION), INTERVENER AND RESPONDENT.

[206 Pac. 399; 213 Pac. 103]

1. CORPORATIONS—OWNER OF EMBEZZLED STOCK, INDORSED IN BLANK. CANNOT RECOVER IT FROM BONA-FIDE PURCHASER.

The crimes and punishments act, sec. 385, providing that embezzled property shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right thereto, does not enable an owner to assert against a bona-fide purchaser his title to embezzled shares of stock transferred in blank from a felon, where the owner was guilty of negligence, which was the proximate cause of the deceit.

2. ACTION—OWNER OF STOLEN PROPERTY MAY MAINTAIN ACTION FOR IT BEFORE CONVICTION OF THIEF.

Under crimes and punishments act, sec. 385, providing that the title to stolen property remains in the owner, and that he may maintain an action to recover it not only against the felon, but against any person in whose possession he may find it, an owner may maintain an action for stolen property before conviction of the thief.

3. ACTION—OWNER IN ACTION TO RECOVER STOLEN PROPERTY IS GOVERNED BY RULES OF PROCEDURE AND LAW INCIDENT TO SUCH ACTIONS.

Under crimes and punishments act, sec. 385, giving an owner of stolen property the right to maintain an action to recover it against the felon or against any person having possession of it, his right to recover is controlled and governed by the rules of procedure and law incident to actions of that character.

## ON REHEARING

1. APPEAL AND ERROR—REHEARING GRANTED TO DETERMINE GROUNDS FOR NEW TRIAL NOT PASSED ON.

Where the effect of an order of the appellate court reversing on one ground only an order of the trial court granting a new trial ends the case adversely to respondent, and the order of reversal is restricted to that one ground, respondent is entitled to a rehearing to ascertain whether other grounds stated in the motion for a new trial were well taken, where such order of reversal should not be construed as overruling the other grounds.

Points decided

2. ESTOPPEL—EVIDENCE HELD SUFFICIENT TO SHOW THAT CONVERSION OF STOCK DUE TO NEGLIGENCE OF OWNER SUBJECTING HIM TO BURDEN OF LOSS RATHER THAN INNOCENT PURCHASER OF STOCK.

Evidence *held* sufficient to show that the conversion of stock mailed erroneously by owner of stock to a western broker and converted by the latter by selling to an innocent purchaser was occasioned by owner's negligence, and to bring the case within the rule that, where a loss has been sustained, it, if occasioned by the owner's negligence, should be borne by him instead of the innocent party.

3. ESTOPPEL—OWNER NOT ESTOPPED FROM DENYING TITLE OF PURCHASER OF STOLEN GOODS, THOUGH GOODS STOLEN AS RESULT OF OWNER'S NEGLIGENCE.

The principle expressed in crimes and punishments act (Rev. Laws. 6650) is that a person who does not lock up his goods, which are consequently stolen, may be said to be negligent as regards himself, but, inasmuch as he neglects no duty which the law casts upon him, he is not in consequence estopped from denying the title of those who may have, however innocently, purchased those goods from the thief.

4. LARCENY—INTENT TO STEAL MUST EXIST AT TIME OF TAKING.

It is not larceny if the property was innocently received and the intent to appropriate was formed after the mistake was discovered; to convict of larceny it is necessary to find that the intent to steal existed at the time of the taking, no subsequent felonious intent sufficing.

5. LARCENY—INTENT TO APPROPRIATE GOODS INNOCENTLY RECEIVED HELD TO HAVE BEEN FORMED AFTER GOODS RECEIVED.

Where a stock-broker innocently received from the owner through mistake certain stocks duly indorsed to the broker, but, instead of notifying the owner of the mistake, the broker converted it. *held,* the stock being received by the broker innocently. his intent to appropriate it was a matter of law. formed after the mistake was discovered, and hence such conversion by the broker was not larceny.

APPEAL from Second Judicial District Court, Washoe County; *J. Emmett Walsh,* Judge.

Suit by Thomas S. Robinson against the Goldfield Merger Mines Company, in which the Catlin & Powell Company intervened. From an order, on motion of the intervener, granting a new trial after a decree for plaintiff against intervener, plaintiff appeals. **Order reversed. On rehearing, former judgment of reversal affirmed.**

*Augustus Tilden,* for Appellant:

In granting a new trial, the lower court erred in holding that the common-law rule is altered by statute. Rev. Laws, 6650. "No statute is to be construed as altering the common law, further than its words import." Shaw v. Bank, 101 U. S. 557. "Conceding it to be within the power of the legislature to make this alteration in the law if it saw fit to do so, nevertheless such radical and far-reaching changes should only be wrought by language so clear and plain as to be unmistakable evidence of the legislative intention." Thompson v. Thompson, 218 U. S. 611; Standard Oil Co. v. U. S., 221 U. S. 1.

While certificates indorsed in blank are not negotiable, still they are recognized as evidence of ownership and of authority to sell, and pass from hand to hand as freely as currency. Safe Dept. Co. v. Hibbs, 229 U. S. 391. "In view of the custom by which certificates indorsed in blank are transferable from hand to hand, like negotiable paper, the owners of such certificates should be required to use the utmost care and diligence in their safe-keeping." Beckwith v. Galice Mines Co., 93 Pac. 453.

The instruction to register the letter was notice of the special importance of the certificates, and called for special care. Joslyn v. King, 2 Am. St. Rep. 656. Intervener negligently loosed the certificates of stock upon the public; negligently put them in the hands of those whose known business was to pass them on to the purchasing public. One is presumed to intend the natural consequences of what he negligently does. Gregory v. R. Co., 14 N. E. 228.

Either plaintiff or intervener must suffer from the mistake in forwarding the certificates. As between them, the loss ought not to fall upon the plaintiff. Stone v. Marye, 14 Nev. 362; Cowdry v. Vandenburgh, 101 U. S. 572; Preston v. Witherspoon, 109 Ind. 457; Power Co. v. Robinson, 52 Fed. 520; Trust Co. v. Hibbs, 229 U. S. 391; Powers v. Perry, 106 Pac. 595.

294  ROBINSON *v.* GOLDFIELD M. CO. [46th Nev.

Opinion of the Court—Sanders, C. J.

*L. D. Summerfield,* for Respondent:

Under the statute title to the stock did not pass. Rev. Laws, 6650. This court is not authorized to read into the statute, by way of judicial declaration, an exception not there found. "It must be conceded that a court has not legislative powers and cannot read into a statute something that is not within the manifest intentions of the legislature as gathered from the statute itself." Ex Parte Pittman, 31 Nev. 43.

The question as to whether negotiable paper is excepted from the statute is not before the court. Jones v. Nellis, 41 Ill. 482.

A purchaser of stock certificates in blank is not in any sense a bona-fide holder for value, nor entitled to protection, nor is any subsequent purchaser of the identical certificates. Barstow v. Savage M. Co., 64 Cal. 388; Winter v. Belmont M. Co., 53 Cal. 428; Sherwood v. Meadow Valley M. Co., 50 Cal. 413; Bangor E. L. & P. Co. v. Robinson, 52 Fed. 520; Pratt v. Higgenson, 119 N. E. 661. Shares of stock are not negotiable instruments. 14 C. J. 664; 8 C. J. 54.

"It is another and very different proposition to maintain that a man shall forfeit his property because he has done an act which will not be perilous unless others are guilty of misconduct which that act does not cause." Knox v. Eden Musee Co., 148 N. Y. 441, 42 N. E. 988. Estoppel does not apply in cases where the entrusting is not intentional or voluntary. Bangor E. L. & P. Co. v. Robinson, supra.

By the Court, SANDERS, C. J.:

This is a proceeding in equity to compel the Goldfield Merger Mines Company, a corporation created under the laws of the State of Washington, to transfer to plaintiff, upon its books, 2,000 shares of its capital stock, evidenced by certificates No. 6107 and No. 6108, for 1,000 shares each. Upon the filing of the complaint, Catlin & Powell Company, a corporation created under

the laws of the State of New York, upon leave, filed its complaint in intervention, demanding that said certificates be transferred to it.   The defendant made no claim to the stock, but professed its willingness to abide the decree of the court as between the rival claimants. The court caused findings of fact to be entered in accordance with the facts stated in plaintiff's complaint, and adjudged and decreed the plaintiff to be the owner and entitled to the possession of the stock, and ordered the defendant to make transfer thereof to plaintiff.   Upon motion of the intervener, the court granted and caused to be entered an order for a new trial.   The appeal is taken from that order.

In April, 1915, the stock of the Merger Mines Company was actively dealt in by brokers and the public. The plaintiff and Charles S. Sprague were copartners, doing a stock-brokerage business under the firm name of Thomas S. Robinson & Co.   U. S. Waugh & Co. were stock-brokers at Goldfield, Nevada, and the Catlin & Powell Company were engaged in a general brokerage business in the city of New York.   The latter had had numerous prior transactions with U. S. Waugh & Co., with whom its course of dealing was, without exception, substantially as follows:  Upon the filling of buying orders for stock, the certificates were shipped by registered mail, with draft attached, for the purchase price, to John S. Cook & Co., bankers at Goldfield, Nevada, with a letter of directions that, upon the payment of the draft, the certificates be delivered to Waugh & Co.

In this instance, the Catlin & Powell Company, upon the receipt of a buying order from Waugh & Co., purchased for them, in due course of its business, 3,000 shares of the Reorganized Booth Mining Company and 3,000 shares of the Merger Mines Company.   The 3,000 shares of the Merger Mines stock were represented by certificates Nos. 6107, 6108, and 6110, for 1,000 shares each.   All the certificates bore an assignment and power of attorney to transfer the same on the corporate books,

executed in blank. The certificates were placed in what is called a "draft envelope," which had a string affixed. A sight draft for the purchase price of all the certificates was placed on the outside of the draft envelope and tied thereon with the string, making one compact enclosure. In this condition the certificates and draft were, with a letter of instructions, given the stenographer of intervener, with express directions to ship the certificates by registered mail to John S. Cook & Co.; but the stenographer, instead of registering and mailing the enclosures to John S. Cook & Co., in accordance with the express directions, inadvertently and mistakenly addressed the mailing envelope and registered it to Waugh & Co. direct, which in due course of mail was delivered to and receipted for by the latter. Waugh & Co. opened the draft envelope and appropriated and converted the certificates of stock to their own use, made no mention to John S. Cook & Co. or to the intervener of the receipt of the enclosures, and, in due course of trade, sold to Thomas S. Robinson & Co. the certificates of stock in controversy for value.

Prior to the institution of this suit, the intervener filed with the defendant corporation an affidavit alleging that the certificates of stock had been stolen, and offered to indemnify the corporation with a bond in double the value of the stock if it would issue to it new certificates, which offer was refused.

For answer to the complaint in intervention, setting up these facts more in detail than here stated, the plaintiff pleaded in bar or for a defense to the action in intervention that the intervener, by its involuntary act and gross negligence, had made it possible for Waugh & Co. to injure and deceive plaintiff, and that, by reason thereof, the intervener should be estopped from claiming, as against plaintiff, its title to the shares of stock evidenced by said certificates.

There is nothing in the record to show what disposition was made of the issue tendered by the complaint, answer and reply to the complaint in intervention, except what is to be implied from the findings and

judgment in favor of plaintiff. The ruling of the court, upon the intervener's motion for a new trial, in substance and effect, is that plaintiff was a bona-fide purchaser of the stock; that the evidence tended to show that Waugh & Co. had embezzled the certificates; and that, by reason of the statute (Crimes and Punishments Act, sec. 385, Rev. Laws, 6650), no title to the stock could be acquired by plaintiff, and its sale and delivery was void. In passing upon the motion, the court took occasion to say that said statute was not called to its attention upon the trial, and had come to its notice only in the argument on the motion for a new trial, and that, upon consideration of the statute, as applied to the undisputed facts, it was impelled to grant a new trial.

1. The question for determination on appeal is whether section 385 of the crimes and punishments act (Rev. Laws, 6650) infringes upon or abrogates the rule of law estopping an owner from asserting, as against a bona-fide purchaser, his title to shares of stock transferred in blank from a felon, where the owner was guilty of such negligence or culpable carelessness as to be the proximate cause of the deceit. Section 385 of the crimes and punishments act reads as follows:

"All property obtained by larceny, robbery, burglary, or embezzlement, shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser, or not, shall divest the owner of his right to such property. Such owner may maintain his action, not only against the felon, but against any person in whose possession he may find the property."

2, 3. This section has formed a part of the crimes and punishments act since 1861. Stats. 1861, p. 67. The principle expressed therein is the outgrowth of the common law. 2 Blackstone, 449; 2 Kent, 324. It has ever been the law that a thief acquires no title to the property which he steals, and can convey none by any sale and delivery which he may make. Stealing continues stealing by whatever name is given it, and the owner of stolen property may recover it from whosesoever hands he finds it. It is obvious, from the statute

that an owner may maintain an action for the restoration to him of his property before the conviction of the felon. Newkirk v. Dalton, 17 Ill. 413. It is probable, considering that when the statute was first enacted it was held in some jurisdictions that, before the owner could maintain his action, he must prosecute and convict the thief, the lawmakers may have had these decisions in mind. From the fact that the owner is, by the statute, privileged to maintain an action for the restoration of his property, it follows that his right to recover is, and must be, controlled and governed by the rules of procedure and law incident to actions of that character, otherwise he might recover upon an ex parte motion, as was attempted in State v. Burns, 27 Nev. 289, 74 Pac. 983.

The intervener having filed his complaint in intervention, the inevitable sequence is that plaintiff had the right to interpose such defense as would in law or equity entitle him to be protected as against the intervener.

The result of the court's ruling on the motion for a new trial is that the statute makes a sale of property obtained in either of the ways pointed out ab initio void. This is true where no element enters into the transaction other than the criminal act. It was so held in the recent case of Robertson v. C. O. D. Garage Co., 45 Nev. 160, 199 Pac. 356. But we do not perceive the force of the court's ruling, or of the contention of counsel for the intervener, that the statute was intended and designed to abrogate the general law of estoppel. Conceding that the rule of the statute is that no sale of property so obtained, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property, it is manifest in the present case that the right of the plaintiff to have the stock transferred was not made to depend upon the actual title of Waugh & Co. to the stock, or his authority to deal with Waugh & Co. directly, but from the act of the intervener, which precluded it from disputing, as against plaintiff, a bona-fide purchaser, the existence of the title or power which, through negligence and

carelessness, it caused or allowed to be vested in Waugh & Co., without notice of any of the infirmities set up in the complaint in intervention. Gass v. Hampton, 16 Nev. 185; Stone v. Marye, 14 Nev. 362. Undoubtedly it is the established rule that ordinarily no person can be deprived of his ·ownership of property save by his own consent or his negligence. The subject of this litigation being shares of stock, evidenced by certificates indorsed in blank, may, for the purposes of the construction of the statute, be conceded to have been stolen, but courts and text-writers recognize that certificates of stock have a law, an origin, and a nature different from other kinds of securities. Their character and status, however, as between the parties, the corporation, and the investing public are fixed and established, either by statute or by decision. The particular rule protecting a bona-fide purchaser of certificates of stock is based on the law of estoppel, which is condensed into the rule that, except in cases of certificates indorsed in blank, and lost or stolen without any negligence on the part of the owner, a bona-fide purchaser is protected. 2 Cook on Corp. (7th ed.) sec. 416. The reason for the rule is present in the Nevada cases above cited, and is reviewed at length in National Safe Deposit, S. & T. Co. v. Hibbs, 229 U. S. 391, 33 Sup. Ct. 818, 57 L. Ed. 1241.

But it is contended that the case at bar is distinguishable from these authorities, because of the criminal act by which the certificates were obtained from the true owner, and the force of the statute. In Shaw v. Merchants' Nat. Bank of St. Louis, 101 U. S. 557, 25 L. Ed. 894, and in Green v. Grigg, 98 App. Div. 445, 90 N. Y. Supp. 565, the court recognizes that, even in cases of theft of such securities, it may be that the true owner by his negligence or carelessness may have put it in the power of a thief to occupy the position of a true owner, and that his negligence or carelessness may estop him from asserting his right against a purchaser, who has been misled to his hurt by that carelessness and negligence. In Barstow v. Savage Mining Co., 64 Cal. 388, 1 Pac. 349, 49 Am. Rep. 705, it was expressly held that a

bona-fide purchaser. of stock, regularly indorsed, and stolen from the present owner, without his fault, gets no title. It was observed, in regard to the matter of negligence, as follows:

"But if the purchaser from one who has not the title, and has no authority to sell, relies for his protection on the negligence of the true owner, he must show that such negligence was the proximate cause of the deceit."

This doctrine is quoted and approved, and supported by the authorities cited in East Birmingham Land Co. v. Dennis, 85 Ala. 565, 5 South. 317, 2 L. R. A. 836, 7 Am. St. Rep. 73. We cannot discover upon what rule of construction the learned trial court could reach the conclusion that the statute infringes upon or abrogates the rule of estoppel established by the above authorities.

Whether, under the uncontradicted facts, the intervener was guilty of negligence and, if guilty, was the proximate cause of the deceit, is not before us, and we pass no opinion upon it. The only question considered upon the motion for a new trial was the construction and legal effect of the statute, but for the existence of which it must be assumed the court would have denied the motion. We therefore restrict our review to the ground upon which the order was made. The court gave the statute an erroneous construction in extending its protection to any and all cases, even though it may have been of the opinion in the particular case that the owner should be estopped by reason of his negligence or carelessness from asserting his right against a bona-fide purchaser, misled to his injury by that negligence or carelessness.

The order appealed from is reversed.

## ON REHEARING

By the Court, SANDERS, J.:

1. In the former opinion the position taken was that the only question considered by the trial court in ordering a new trial was erroneously decided, and our order of reversal was restricted and limited to that one question. Upon petition for rehearing we were asked by

respondent to pass upon the other grounds stated in its motion for new trial, in order that it might be informed as to whether the grounds stated therein were well taken. The respondent is entitled to know this, as the effect of the order of reversal ended the case adversely to respondent. Upon consideration of the entire record, we conclude that the order granting a new trial on the one question decided should not be construed as overruling the other grounds stated in the motion. Reno Mill Co. v. Westerfield, 26 Nev. 332, 69 Pac. 899. The point was not raised on the former hearing, and we granted a rehearing to consider the several grounds upon which the motion for a new trial was made, namely, the insufficiency of the evidence to support the decision, and that the decision is against law. The facts are fully stated in the former opinion, and we shall restate only so much thereof as necessary to make clear the errors of law now insisted upon.

2. It is admitted that the course of dealing, without exception, between Catlin & Powell Company, brokers of New York City, and U. S. Waugh & Co., brokers of Goldfield, Nevada, was that, upon the filling of buying orders of stock for Waugh & Co., the Catlin & Powell Company would transmit the certificates, duly indorsed for transfer, to John S. Cook & Co., bankers at Goldfield, with draft attached, accompanied by a letter of instruction to deliver the certificates to Waugh & Co. upon the payment of the draft. The certificates in controversy were enclosed in a draft envelope, with a draft printed thereon, but not sealed, and inclosed in a mailing envelope with a letter containing the usual directions, and delivered to the stenographer of Catlin & Powell Company, with directions that she transmit the same by registered mail to John S. Cook & Co. But the stenographer, by reason of her mistake and confessed error, transmitted the inclosures, on the 22d day of April, 1915, to Waugh & Co. by registered mail, instead of to John S. Cook & Co., contrary to the instructions as given her by Catlin & Powell Company. The certificates, draft, and letter thus addressed were received by

Waugh & Co. in due course of mail, on the 27th day of April, 1915, as shown by the registry receipt. On the 28th day of April, 1915, Waugh & Co. sold the stock represented in said certificates to Thomas S. Robinson & Co., in the regular course of trade, for value, and, without notifying John S. Cook & Co. or Catlin & Powell Company, passed title thereto by delivery to Thomas S. Robinson & Co.

3. Applying the rule of negligence discussed in the former opinion to these undisputed facts, if it can be legally determined that the certificates thus appropriated and sold by Waugh & Co. were stolen, Thomas S. Robinson & Co. are not protected as innocent purchasers, because the negligence or carelessness of respondent's stenographer of itself was not the proximate cause of the theft, though it afforded an opportunity for its perpetration.

"A person who does not lock up his goods, which are consequently stolen, may be said to be negligent as regards himself, but inasmuch as he neglects no duty which the law casts upon him, he is not in consequence estopped from denying the title of those who may have, however innocently, purchased those goods from the thief. * * * " Swan v. N. B. Australasian Co., 2 H. & C. Reports (Eng.) 179.

This is a true and sound principle expressed in our crimes and punishments act (Rev. Laws, 6650).

It is argued on behalf of appellant Robinson that, upon the undisputed facts, the certificates in question were not acquired by Waugh & Co. through any criminal act, consequently the case comes within the principle that one who, by his own neglect, is responsible for or the cause of a loss, should bear it instead of an innocent party. Obviously, it was upon this theory that the district court decided the case on its merits in favor of the appellant, but granted a new trial upon the theory that the certificates were stolen. In support of the court's ruling, it is argued on behalf of respondent that Waugh & Co. knew that Catlin & Powell Company had

no intention of delivering the certificates to them, that the delivery was a mistake, and upon its discovery Waugh & Co. then and there formed the intention to appropriate and retain the certificates, which was a fraud, amounting to larceny.

4.  By greater weight of authority, it is not larceny if the property was innocently received and the intent to appropriate was formed after the mistake was discovered.  18 Am. & Eng. Ency. of Law, 481.  See, also, note entitled "Larceny of Money or Property Delivered by Mistake," 52 L. R. A. 136.

In Rex v. Mucklow, 1 Moody C. C. (Eng.) 160, it was held:

"That if a man takes a letter supposing that it belongs to himself, and, on finding that it does not, appropriates to himself the property it contains, he is not answerable for larceny, there being no animus furandi when he first received the letter."

To convict of larceny, it is necessary to find that the intent to steal existed at the time of the taking.  No subsequent felonious intent will suffice.  State v. Clifford, 14 Nev. 72, 33 Am. Rep. 526.

5.  The certificates of stock, duly indorsed for transfer, and quasi negotiable, were received by Waugh & Co. innocently, and their intent to appropriate the stock represented thereby must, of necessity, have been formed after the mistake was discovered.  In this situation we cannot say that the conversion of the certificates was, as a matter of law, larceny.

The question of Waugh & Co.'s. asserted criminal act being eliminated from the transaction, the undisputed facts bring the case within the principle that where a loss has been sustained, if occasioned by the plaintiff's negligence, it should be borne by it, instead of an innocent party.  North British & M. Ins. Co. v. Merchants' Nat. B., 161 App. Div. 341, 146 N. Y. Supp. 725.

In opposition to the application of the rule of estoppel by negligence stated in the former opinion as being applicable to the case at bar, on the authority of Bangor

E. L. & P. Co. v. Robinson, 52 Fed. 520, it is argued that the negligence of the stenographer of respondent was not such as to entitle appellant to the protection of the rule. The adjudication in Bangor E. L. & P. Co. v. Robinson does not meet this case, because there is no similarity in the special facts. As was observed in the opinion, the certificates there involved were treated as stolen property.

The order granting a new trial must be reversed.

It is so ordered.