# STRASSBURG *v.* MONTGOMERY ET AL.

No. 3103

August 5, 1935.                                    47 F. (2d) 859.

*Chas. A. Cantwell,* for Appellant:

*Harry Dunseath* and *J. M. Frame,* for Respondents:

## OPINION

By the Court, COLEMAN, J.:

Plaintiff brought this action to obtain a judgment declaring him to be the sole owner of the title to certain bonds described in the complaint. He has appealed from an adverse judgment and an order denying a motion for new trial.

It is agreed in this case that on January 3, 1934,

the plaintiff is, and at the time of the transaction here-inafter mentioned was, a duly and regularly licensed broker engaged in the business of buying and selling stocks, bonds, and other securities in Reno, Nevada; that the defendant, Mrs. Esther G. Montgomery, was the owner of six certain bonds, negotiable by delivery, mentioned and described in the complaint; that on said day one G.W. Childress, with felonious intent to defraud the said Montgomery and to steal and fraudulently convert the same to his own use and benefit, falsely and fraudulently represented to the said Montgomery that the company issuing said bonds had called the same in for redemption, and would pay therefor the sum of $1,020 for each bond; that said Montgomery, believing said statement to be true, delivered said bonds to said Childress for the sole purpose of transmission to the company issuing the same, for the purpose of redemption, upon the condition a draft for the value should be sent direct to Mrs. Montgomery; that at the time the bonds were so delivered to Childress he was the accredited agent of National Loan & Holding Corporation, Limited; that said Childress thereafter unlawfully, fraudulently, and feloniously embezzled said bonds and converted the same to his own use; that said Childress, under the pretense that he was the owner of said bonds, delivered the same to plaintiff to be sold for him at the market value, upon commission; that plaintiff at the time of receiving said bonds had no actual notice that Childress was not the owner of said bonds, or of any acts and conduct on his part in fraudulently obtaining possession of the same; that plaintiff did negotiate the sale of said bonds for the full market value thereof and paid the proceeds thereof, less commission, to said Childress.

It is further agreed that after the plaintiff had sold said bonds and delivered the proceeds thereof to Childress, Mrs. Montgomery caused notices to be given to the issuing company and other security dealers throughout the United States that said bonds were stolen property, which notice caused the ultimate purchaser thereof

to demand there be delivered to him six other bonds of like series in the place of those to which Mrs. Montgomery claimed title; that the plaintiff was thereupon compelled to buy in the open market other bonds of like character and deliver them to the ultimate purchaser; and that he now has in his possession the six bonds originally delivered to him.

On this appeal the plaintiff makes two points: (1) That he is the holder of the bonds in question in due course, hence Mrs. Montgomery cannot successfully assert title thereto; and (2) that Mrs. Montgomery should be estopped from asserting title thereto. We think both contentions are well founded.

■■ As to the first contention, we must have in mind that in the agreed statement of facts it is stated that the plaintiff was "compelled" to buy in the open market six other bonds and deliver them to the ultimate purchaser of the bonds in question. The word "compelled" is significant. The sense in which it was used must be determined from the context. It was held in Sinnott v. District Court, 201 Iowa, 292, 207 N. W. 129, that the word "compelled" in a statute was used in the sense of duty or obligation. In Temple Lumber Co. v. Living (Tex. Civ. App.), 289 S. W. 746, it was held that "compelled" and "enforced" have the same primary meaning. It is very evident from the context in the agreed statement in this case that the word "compelled" was used in the sense that it was the legal duty of the plaintiff to substitute other bonds for the ones in question. If this is true, he stepped into the shoes of the ultimate purchaser. We think we must take this view, if for no other reason, because under the rules of the New York Stock Exchange, and of other stock exchanges, a broker who sells securities which were theretofore stolen or lost, or to which the title is called in question, must replace them with other securities of like kind and amount. This duty rests upon the broker who first introduced them into the market, as did plaintiff. The Law of Stock Brokers and Stock Exchanges, Meyer, pp. 523, 524.

As we view it, the conclusion which we have reached is in accord with the better reasoned authority. In Gruntal v. National Surety Co., 254 N. Y. 468, 173 N. E. 682, 683, 73 A. L. R. 1337, where the identical question here involved was presented, the court said: "When the brokers took back the stolen bonds, as above stated, they paid value for them; they made good their delivery by substituting other bonds of like kind and nature. * * * The substituted bonds were their property. The agency for their customers had terminated. They therefore had all the rights of these holders in due course, unless they came within the exception; that is, were parties to the fraud or illegality affecting the title to the bonds."

While the case of Pratt v. Higginson, 230 Mass. 256, 119 N. E. 661, 1 A. L. R. 714, is not squarely in point, we think the reasoning of it supports the conclusion which we have reached.

It is suggested that the case of Kimball v. Billings, 55 Me. 147, 92 Am. Dec. 581, is contrary to our conclusion. We think not. There was not involved in that case a state of facts which makes it an authority in point in the instant case.

■ In our opinion the plaintiff was a purchaser in due course.

We come now to the second question; that is, Should Mrs. Montgomery be estopped? We think she should. The only objection urged to this contention is section 10337 N. C. L., which reads: "All property obtained by larceny, robbery, burglary, or embezzlement, shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser, or not, shall divest the owner of his right to such property. Such owner may maintain his action, not only against the felon, but against any person in whose possession he may find the property."

This section has been upon the statute books of this state since 1861 (Stats. 1861, p. 67). In Robinson v. Goldfield M. M. Co., 46 Nev. 291, 206 P. 399, 401, 213

P. 103, we said, with reference to it: "We do not perceive the force of the court's ruling, or of the contention of counsel for the intervener, that the statute was intended and designed to abrogate the general law of estoppel. * * * "

In the case of Swan v. N. B. Australasian Co., 2 H & C. Reports (Eng.) 179, it is said: "A person who does not lock up his goods, which are consequently stolen, may be said to be negligent as regards himself, but inasmuch as he neglects no duty which the law casts upon him, he is not in consequence estopped from denying the title of those who may have, however innocently, purchased those goods from the thief. * * * "

■ There the distinction is recognized between a duty which the law imposes upon one as to the rights of others, and where no such duty is imposed. In the instant matter it may be said that the law imposed upon Mrs. Montgomery the duty of avoiding such active negligence as might result in the injury of others. In other words, the law does not cast upon an individual the imperative duty of being cautious in the handling of negotiable securities, but it does hold him liable for his negligence when that negligence results in the perpetration of an injury upon an innocent third party. Such was the holding in Gass v. Hampton, 16 Nev. 185, where the owner of stocks left certificates of stock with another in such a condition that they might pass by delivery to an innocent third person. In disposing of the case, the court said: "Under these circumstances the case comes clearly within the principle, announced in Thompson v. Toland, 48 Cal. [99] 112, that 'the party who places another in a position to enable him to practice the fraud should suffer the loss rather than an innocent person who deals with him on the faith of the usual indicia of ownership with which the true owner has invested him.' "

See, also, Keyworth v. Nevada Packard Mines Co., 43 Nev. 428, 438, 186 P. 1110; Ewart on Estoppel, p. 395.

We think Mrs. Montgomery should be estopped.

■ It is true, as contended by counsel for respondent, that plaintiff did not plead estoppel, but where no estoppel is pleaded, but evidence is introduced showing facts which justify the court in holding that a party is estopped, without objection, the failure to plead estoppel is immaterial. In this case the parties stipulated to the facts, which make it a stronger case.. Estoppel may be urged by the plaintiff. Capital Lumber Co. v. Barth, 33 Mont. 94, 81 P. 994; Davis v. Davis, 26 Cal. 23, 85 Am. Dec. 157; Flandreau v. Downey, 23 Cal. 354; Bates v. Norcross, 17 Pick. (Mass.) 14, 28 Am. Dec. 271; Gray v. Pingry, 17 Vt. 419, 44 Am. Dec. 345, and note; McDonnell v. De Soto, etc., 175 Mo. 250, 75 S. W. 438, 97 Am. St. Rep. 592; Standard Sanitary Mfg. Co. v. Arrott, 135 F. 750, 68 C. C. A. 388.

For the reasons given, the judgment and order appealed from are reversed, and the case is remanded with directions to the trial court to enter a judgment in favor of plaintiff, as prayed.

TABER, J.: I concur.

DUCKER, C. J., dissenting:

I cannot lend my assent to the prevailing opinion. It reads an exception into section 10337 N. C. L. against the plain language of the provision.

Childress embezzled the bonds when he converted them to his own use. The statute gives the owner the right of restoration of his property in such a case against the felon or any person in whose possession it may be found. As to the kind of property in regard to which the listed crimes may be committed, the terms of the section are all inclusive. They except none. The majority opinion excepts negotiable instruments. This on the theory that Mrs. Montgomery was actively negligent in permitting herself to be tricked out of her bonds. It might be questioned whether she was negligent, either actively or passively. But be that as it may, the statute does not purport to divest a negligent owner of his

property right.  It has nothing to say about negligence or anything else that may work a forfeiture.

Authority for holding Mrs. Montgomery to be estopped is sought in the case of Robinson v. Goldfield M. M. Co., 46 Nev. 291, 206 P. 399, 213 P. 103.  This decision is not at all apposite.  Property obtained by larceny, robbery, burglary, or embezzlement was not involved in that case.  The dicta relied upon, if thought to come in collision with the statute, should be subordinated thereto. The felonious obtaining of property necessary to call into operation the rule of the statute was not under consideration in Gass v. Hampton, 16 Nev. 185, also cited in the majority opinion.

If it be thought that section 10337 N. C. L., which has been on the statute books since 1861, is inequitable on account of its scope, resort for amendment should be had to the legislature.

The judgment of the trial court should be affirmed.

### ON PETITION FOR REHEARING

November 15, 1935.

*Per Curiam:*

Rehearing denied.

DUCKER, C. J.:  I dissent.