HENDRY, Judge.
Plaintiff appeals from the circuit court’s dismissal of her complaint for failure to state a cause of action. Plaintiff was the owner of Two Hundred Thousand Dollars worth of government bearer bonds. She delivered these bonds to one Adjmi by virtue of his fraudulent statements to her, and by his committing larceny by trick or fraudulent pretext. Thereupon, Adjmi delivered the bonds to the defendant, with whom Adjmi had previous dealings, for it to collect for him. The defendant collected the proceeds of the bonds, and paid it over to Adjmi, who has since absconded. Plaintiff instituted this action seeking to recover from the defendant for paying the proceeds to a party who was not entitled thereto.
Plaintiff has contended that the defendant is not a holder in due course of these bonds because it knew or should have known that Adjmi did not have good title to the bonds.[1] We concur in the plaintiff’s contention as to the status of the law in regard to negotiable instruments, but we find that it has no application in the present litigation. The defendant was not a holder in due course of these bonds, in fact, the defendant did not have these bonds negotiated to it at all. The defendant was merely Adjmi’s agent for collection.[2] The bonds were not negotiated nor attempted to be negotiated to defendant, therefore, the provision of the negotiable instruments law dealing with holders in due course is inapplicable.
 The only possible basis of recovery would be if the defendant, as the agent of a convertor of the plaintiff’s property was answerable to the plaintiff. As a general proposition, the immediate response would seem to be an emphatic yes. But here we are dealing with a negotiable instrument, and it would seem that there might be a *334 different result. Our research has revealed no controlling Florida case.
In the early case of Swim v. Wilson, 90 Cal. 126, 27 P. 33, 13 L.R.A. 605 (1891), a stock broker who had received for sale, shares of stolen stock was liable to the owner thereof, even though the broker was acting in good faith and without knowledge of the theft of this bearer paper. The court stated the rule to be:
“To hold the defendant liable, under the circumstances disclosed here, may seem upon first impression to be a hardship upon him. But it is a matter of every-day experience that one cannot' always be perfectly secure from loss in his dealings with others, and the defendant here is only in the position of a person who has trusted to the honesty of another, and has been deceived. He undertook to act as agent for one whom it now appears was a thief, and, relying on his representations, he aided his principal to convert the plaintiff’s property into money, and it is no greater hardship to require him to pay to the plaintiff the value of this property than it would be to take it away from the innocent vendee who purchased and paid for it. And yet it is universally held that the purchaser of stolen chattels, no matter how innocent or free from negligence in the matter, acquires no title to such property as against the owner, and this rule has been applied in this court to the innno-cent purchaser of shares of stock.” 27 P. at 33-34.
For a while, the courts adhered to the foregoing, in regard to negotiable securities as well as other forms of personal property.[3]
Thereafter, the conditions of modern business, required the courts to adopt a different provision, or to be more precise, to provide for an exception to the general rule that the agent of a convertor is liable to the true owner for the conversion.[4]
This exception has been best enunciated by the Restatement of Agency 2d, § 349(g) :
“The agent may be protected even though his principal is not privileged. Thus, if an agent, on account of his principal, sells a negotiable instrument, the holder of which has the power to pass title, the agent does not convert the instrument if he sells it without notice of the rights of the person entitled to possession, although his principal is not a bona fide holder of the instrument. Likewise an agent who, without notice of the fraud, sells goods, title to which his principal has obtained by fraud, is not liable to the defrauded owner.”
Based on the more modern approach, it would seem that the broker while acting as. the agent of the tortfeasor, does not incur liability for taking such action as will defeat the original owner’s title.
There is one final possible ground of recovery by the plaintiff, and that is on the basis of the defendant’s alleged negligence. It is our opinion that the acts attributed to. the defendant in the complaint did not amount to actionable negligence as a matter of law. The question resolves itself upon *335 the determination of whether a broker who accepts bearer bonds from a person with a bad reputation in the business community is negligent in so doing.
It would completely defeat the purpose of the negotiable instruments law to hold that the defendant was negligent for failing to inquire into the ownership of bearer bonds delivered to the defendant for collection by a person with a “bad reputation”. This is especially true where the plaintiff has taken that action which put the series of events resulting in loss in operation, by delivering the bonds to Adjmi.
In an early Louisiana case, a bank sought to recover money embezzled from it by the bank’s paying teller which he had used to buy cotton futures from the defendant brokers. The court rejected this theory:
“The bank itself placed Chisholm in the position which enabled him to abstract the moneys and furnish him with the opportunity for doing so. Its own negligence was the direct cause of after consequences.” First National Bank of Birmingham, Ala. v. Gilbert & Clay, 123 La. 845, 49 So. 593, 595, 25 L.R.A., N.S., 631 (1909).
Similarly, it was the plaintiff, chargeable with the same knowledge of Adjmi’s bad character as the defendant, who delivered the bearer bonds to Adjmi. If plaintiff had given Adjmi $200,000.00 in One Dollar bills, and Adjmi had deposited that, cash in a bank, and then withdrawn the money from that bank, plaintiff could not hold the bank, nor can she hold this broker, because those bonds were as good as cash and the defendant was entitled to so treat them.
Accordingly the judgment appealed is affirmed.
Affirmed.

. § 674.61 Fla.Stat., F.S.A.

. Sorrells Bros. Packing Co. v. Union State Bank, Fla.App.1962, 144 So.2d 74. What was said in regard to banks, in Sorrells, supra, is equally applicable to brokers.

. Jennie Clarkson Home, etc. v. Missouri, K. & T. Ry. Co., 182 N.Y. 47, 74 N.E. 571, 70 L.R.A. 787 (1905).

. First Nat. Bank of Blairstown v. Goldberg, 340 Pa. 337, 17 A.2d 377 (1941); Kentucky Rock Asphalt Co. v. Mazza’s Adm’r, 264 Ky. 158, 94 S.W.2d 316 (1936); Strassburg v. Montgomery, 56 Nev. 183, 47 P.2d 859 (1935); Gruntal v. National Surety Co., 254 N.Y. 468, 173 N.E. 682, 73 A.L.R. 1337 (1930); Pratt v. Higginson, 230 Mass. 256, 119 N.E. 661, 1 A.L.R. 714 (1918); Joseph v. Les-nevich, 56 N.J.Super. 340, 153 A.2d 349 (1959).