D. C. BROWN, *Plaintiff in Error,* v. THE PEOPLES BANK FOR SAVINGS OF ST. AUGUSTINE, FLORIDA, *Defendant in Error.*

1. In the absence of a controlling statute or agreement, where a check payable in another city is endorsed in blank and deposited with a bank to be credited to the depositor, the endorser engages only that if the check shall not be paid on due presentation that he will pay the amount to the holder of the check. The bank selects its agents for collection at its own risk, and if the check is paid, the bank of deposit is liable even though the collecting agent does not remit the collection.

2. Chapter 5951 Acts of 1909 does not affect rights existing prior to its passage.

This case was decided by Division A.

Writ of error to the Circuit Court for St. Johns County.

The facts in the case are stated in the opinion of the court.

*Bisbee & Bedell,* for Plaintiff in Error;

*Cooper & Cooper,* for Defendant in Error.

WHITFIELD, C. J.—Brown endorsed in blank and deposited in the St. Augustine bank a check drawn in his favor and payable in Miami. The amount of the check was credited to Brown and he was given a pass-book showing the credit. The bank sent the check for collection through its banking correspondents, but the collecting bank at Miami failed after the amount of the check was paid to it and did not remit to the St. Augustine bank. The credit to Brown by the bank of deposit was cancelled and payment refused.

Action was brought March 21st, 1908, against the bank to recover the amount of the check. The court directed a verdict for the defendant and the plaintiff took writ of error.

In a number of jurisdictions, it is held that in the absence of a statute or special agreement where commercial paper payable in one locality is deposited with a bank in another locality, and the bank of deposit uses due care and diligence in selecting the collecting agent and in forwarding the paper for collection, it is not liable for the failure of the agency to pay the proceeds of the paper when collected, upon the theory that the depositor knows the bank must act through some agency in making the collection at a distance, and therefore impliedly, from the nature of the business, assents to the employment of such agency and makes them his agents. 1 Morse on Banks, Paragraph 267 *et seq.;* Fabens v. Mercantile Bank, 23 Pick. (Mass.), 330; Second Nat. Bank of Louisville v. Merchants' Nat. Bank of New Albany, Ind., 111 Ky., 930, 65 S. W. Rep., 4.

In other jurisdictions, it is held that in the absence of a statute or agreement where commercial paper is deposited with a bank and has to be sent to a distant place for collection, the bank selects its agents for collection at its own risk and if the collection is made, the bank

of deposit is liable even though the collecting agent does not remit the collection.  2 Bolles on Banking, 575; Simpson v. Waldby, 63 Mich., 439, 30 N. W. Rep., 199; 5 Cyc., 502; Mackersy v. Ramsays, 9 Clark & F., *818; Allen v. Merchants' Bank of N. Y., 22 Wend. (N. Y.) 215; Exchange Nat. Bank of Pittsburgh v. Third Nat. Bank of N. Y., 112 U. S., 276, 5 Sup. Ct. Rep., 141; 3 Am. & Eng. Ency. of Law (2nd Ed.) 810 and notes.

There is no statute or special agreement to control this case.

Sound reason and practical justice require the enforcement of the rule imposing liability for the loss of the proceeds of a deposited check upon the bank of deposit when the check is paid by the drawee in a distant city upon its presentation by the collecting agent of the depositing bank, where the depositor had no part in the selection of the collecting agent or in the collection.  See Power v. First Nat. Bank of Fort Benton, 6 Mont., 251, 12 Pac. Rep., 597; Streissguth v. National German-American Bank, 43 Minn. 50, 44 N. W. Rep., 797; State Nat. Bank of Ft. Worth v. Thomas Manuf'g Co., 17 Tex., Civ. App., 214, 42 S. W. Rep., 1016; Streissguth v. National German-American Bank, 43 Minn., 50, 44 N. W. Rep., 797, 7 L. R. A., 363.

If being expressly or impliedly authorized to do so an agent employs a sub-agent for his principal, then the sub-agent is the agent of the principal, and is directly responsible to the principal for his conduct, and, so far as damage results from the conduct of the sub-agent, the agent is only responsible for a want of care in selecting the sub-agent.  But if the agent, having undertaken to do the business of his principal, employs a servant or agent, on his own account, to assist him in what he has undertaken, such a sub-agent is an agent of the agent, and is responsible to the agent for his conduct, and the agent is responsi-

ble to the principal for the manner in which the business has been done, whether by himself, or by his servant or agent. This liability extends to defaults as well as negligence. Barmard v. Coffin, 141 Mass., 37, 6 N. E. Rep., 364, 55 Am. Rep., 443; 2 Clark & Skyles on Agency, Paragraph 438, page 971.

This rule is generally recognized in cases involving the law of agency, but its application to varying facts and circumstances has not always lead to the same result.

In this case the bank of deposit at St. Augustine received from the depositor a check endorsed in blank which at least *prima facie* carried title to the bank, and the undertaking of the bank was to do on its own account everything necessary to collect the check as the basis of the credit given by the bank to the depositor upon the endorsement and delivery of the check to it. This undertaking included the sending of the ————— check ————— to ————— Miami, the demand for and receipt of the amount it called for and the return of the amount to the bank of deposit at St. Augustine, where it had already been credited to the depositor and a pass-book showing the credit given to the depositor. The relation of debtor and creditor was established between the depositor and the bank by the deposit. There is nothing in the transaction between the depositor and the bank of deposit indicating any reservation to the endorser of title or right in the check or any directions or agreement express or implied as to the manner of its collection. By the endorsement in blank and delivery of the check the depositor engaged that on due presentation, the check would be paid, and if not honored, and the necessary proceedings on dishonor be duly taken, that he would pay the amount to the holder of the check. Paragraph 2999, General Statutes of 1906. The consideration to the bank was the use of the check in its dealings with other banks, and the use of the proceeds after collec-

tion. For the continued use of the money interest at the rate of four per cent per annum was to be allowed to the depositor upon amounts remaining on deposit continuously for at least six months. The use of the check and the contingent use of the proceeds were a sufficient consideration for both the collection and the interest allowed. The depositor lost control over, and transferred his title to, the check by its endorsement and delivery to the bank. In return he received a credit with the bank. His only obligation was that the check should be paid upon due presentation. This obligation was discharged by the payment of the check when it was presented to the drawee. The depositor had no part in selecting the agent to make the collection or in the collection. Taking the check as endorsed indicated ability and desire to use it.

The transaction between the parties contemplated the binding relation of debtor and creditor contingent only upon the payment of the check. The bank selected its own agents to collect the check for it. After payment of the check the depositor was not liable for a loss resulting from the bank's selecting of its own agent.

The bank necessarily had far better opportunities to know of the safest agencies for the collection of the check and it made its own selection of its agents without reference to the depositor. There was no ground upon which the law could imply authority from the depositor to the bank for the selection of an agency for collecting the check that would be the depositor's agency. The bank owned the check and the depositor had a credit for it. The depositor needed no agent. No such agency was contemplated by the plaintiff or by the law. There was no privity of contract or relation between the depositor and the collecting agent. The pass-book contained the "Rules and Regulations Governing Deposits and Depositors," which were assented to, and they do not include any suggestion that

the check deposited was received on any condition or contingency whatever. The law imposed the condition that if the check be not paid on due presentation, the endorsee should pay the amount to the holder of the check. The loss resulted from the selection by the bank of its own agent to collect a check to which it had title and possession.

It was agreed that it was to be considered that over the objection of the plaintiff Brown, it was shown in evidence that the check was sent for collection "according to the usual and customary business of banks in St. Augustine, Florida, on and in making such collections; that according to the usual and customary manner of doing such banking business in the City of St. Augustine and in the State of Florida generally, that so receiving and crediting a check on deposit is done and made subject to the actual collection of said check and the receipt of the proceeds thereof by the bank so receiving the same of deposit and crediting same, and is subject to be corrected and such credit to be cancelled or done away with in case such check should not be actually collected and its proceeds actually received by such bank, and that defendant in receiving for deposit and crediting said check to plaintiff as aforesaid acted upon said general understanding and manner of doing such banking business and with intent of so receiving and crediting said check, although there was no discussion of that matter with the plaintiff." It was also agreed that it was shown that the plaintiff was an experienced business man engaged for many years in a general merchandise business in Florida, and that he never knew of any such custom as above stated. It was further agreed to be considered that over the objection of the defendant bank it was shown in evidence that it is "customary for banks in Florida to have printed on the cover of the pass-books issued to depositors a notice or

VOL. 59, JANUARY TERM, 1910.        169

Brown v. P. B. for S. of St. Augustine, Fla.—Opinion of Court.

rule substantially in these words, viz., 'checks, drafts, etc., deposited for credit or collection are taken at risk of depositor until final actual payment is received. This bank will assume no responsibility for neglect or default of collecting agents.' " No such notice or rule was printed or written in the pass-book issued to plaintiff by defendant.

It appearing that the plaintiff knew of no custom by which banks took checks as deposits subject to the final receipt of the proceeds thereof by the bank of deposit and that no such custom or purpose was disclosed to him when the deposit was made so as to bind the depositor by such knowledge or implied assent, the testimony on this subject was not admissible, it being contrary to the rule of liability imposed by law.

The testimony as to the custom for banks in Florida to have printed on the pass-books issued to depositors a notice or rule that checks, &c, are taken on deposit at the risk of the depositor until final actual payment is received and that the bank assumes no responsibility for neglect or default of collecting agents, is consistent with the rule of law on the subject, and admissible in evidence. The custom contemplates the existence of liability unless otherwise impliedly agreed to by the acceptance of the pass-books with the rule of exemption printed thereon. As no such rule or notice was endorsed on the pass-book delivered to the plaintiff showing the unconditional credit to him, the rule of liability contemplated by the custom to have the notice placed on the pass-books of banks in this State is applicable under the facts of this case. No negligence on the part of the bank of deposit is shown here, but this is not essential to liability. The liability arises out of the contract relation of debtor and creditor created by the deposit. The check having been paid to the agent of the defendant bank who was not the agent of the plaintiff, the plaintiff's undertaking that the check would be

paid is performed; and the defendant's credit to the plaintiff should have stood as originally made. The failure of the bank of deposit to pay the amount upon the demand of the plaintiff makes a liability in his favor.

Subsequent to the bringing of this action the legislature enacted Chapter 5951, approved June 8, 1909, which contains the following provisions:

"Section 1. That when a check, draft, note or other negotiable instrument is deposited in a bank for credit, or for collection, it shall be considered due diligence on the part of the bank in the collection of any check, draft, note or other negotiable instrument so deposited, to forward enroute the same without delay in the usual commercial way in use according to the regular course of business of banks, and that the maker, endorser, guarantor or surety of any check, draft, note or other negotiable instrument, so deposited, shall be liable to the bank until actual final payment is received, and that when a bank receives for collection any check, draft, note or other negotiable instrument and forwards the same for collection, as herein provided, it shall only be liable after actual final payment is received by it, except in case of want of due diligence on its part, as aforesaid.

Sec. 2. All laws which are in conflict with this Act are hereby repealed, and this Act shall take effect immediately upon its approval by the Governor."

A legislative regulation may be declaratory of the common law rules of liability or procedure, or it may modify or change such rules. The rule of liability herein announced being the rule consistent with the jurisprudence of this State and its commercial conditions and practices, as recognized in the custom to proclaim a rule or notice to avoid by acquiescence the consequences of the rule of liability, the legislation above quoted was manifestly designed to change the existing rule, and being prospective

merely does not affect this case. See Carney v. Hadley, 32 Fla., 344, 14 South. Rep., 4, 37 Am. St. Rep., 101, 22 L. R. A., 233; Vinson v. Palmer, 45 Fla., 630, 34 South. Rep., 276; Lewis' Sutherland Stat. Const., Paragraphs 11, 294, 329.

The judgment is reversed.

SHACKLEFORD, and COCKRELL, J. J., concur.

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.