G. L. EDWARDS, as Receiver of SUWANNEE RIVER BANK, a Corporation, *Appellant,* v. W. B. LEWIS, trading as JASPER GROCERY COMPANY, *Appellee.*

Opinion filed November 20, 1929.

*J. B. Hodges,* Attorney for Appellant;

*I. J. McCall* and *F. B. Harrell,* Attorneys for Appellee.

DAVIS, Commissioner:

The appellee (complainant in the court below) filed his amended bill of complaint against the appellant and alleged in substance that he was the holder and owner of certain checks drawn on the Suwannee River Bank; that such checks were by him "deposited in the Commercial Bank of Jasper" after being indorsed by him; that they were forwarded by the Commercial Bank of Jasper for collection and remittance to the Barnett National Bank of Jacksonville; that the Barnett National Bank forwarded them for collection directly to the said Suwannee River Bank, which said bank charged to the accounts respectively of the drawers of the said checks, they having sufficient credit balances on deposit to pay them; that the said Suwannee River Bank had at the time of receiving said checks sufficient funds available to pay all of them and continued to have every day thereafter until the bank closed sufficient funds "so available"; that the Suwannee River Bank forwarded to the Barnett National Bank its checks drawn on the Atlantic National Bank of Jacksonville in sums sufficient to cover, and for the purpose of paying the proceeds from the collections of the several checks deposited by the complainant with the Commercial Bank of Jasper, as well as for other items that might have been due the Barnett National Bank by the said Suwannee River Bank; that the

checks so deposited by him had been delivered by the Suwannee River Bank to the respective drawers of the same marked paid by it; that the checks drawn by the Suwannee River Bank upon the Atlantic National Bank and forwarded to the Barnett National Bank were not paid when presented, or at any time thereafter; that the Suwannee River Bank suspended business and was insolvent at the time of making such collections; that at the time the Suwannee River Bank suspended business, it had in its possession, custody and control cash items in excess of amount of complainant's deposit; that a receiver was appointed to take charge of the assets of the Suwannee River Bank; that after the Suwannee River Bank suspended business, the Barnett National Bank charged to the account of the Commercial Bank of Jasper the amounts of the checks deposited by the complainant; that the checks deposited by him were never returned to the complainant; that he made demand upon the said receiver for the payment of the aggregate amount of the said checks so deposited by him as a preferred claim payable before unsecured claims against the Suwannee River Bank were paid, which claim, though admitted by the receiver as a just claim, was denied and refused to be considered as a preferred claim; that it was the custom and understanding between the Commercial Bank of Jasper and the Barnett National Bank, and between the said Barnett National Bank and the Suwannee River Bank, at the time the said checks were forwarded to the Suwannee River Bank for collection, that the said Suwannee River Bank should remit to the Barnett National Bank as the agent of the Commercial Bank of Jasper, the amount of money collected each day and the day the same was collected; that there was no understanding between the said Barnett National Bank and the Suwannee River Bank that the Barnett National Bank should give any credit or

allow the said Suwannee River Bank any latitude in the time of remitting for said checks sent for collection; that the Barnett National Bank kept no account with the Suwannee River Bank and had no credit balance with it; that there were no reciprocal or mutual accounts of any kind between the said Barnett National Bank and the Suwannee River Bank; that the assets held by the said receiver were impressed with a trust in favor of the complainant, and that he is entitled to have his claim against the receiver allowed as a preferred claim.

The defendant demurred to the bill on the grounds:

"1. That it does not appear from the bill of complaint that the complainant is able to trace or locate any trust fund.

2. That no agency is shown to exist between the complainant and the Suwannee River Bank.

3. That it appears from the bill of complaint that the checks mentioned therein were sent to the Suwannee River Bank through more than one bank by the complainant in the usual course of business, and without any special instructions relative to the collection and remittance of the proceeds thereof.

4. That it appears from the allegations of the said bill of complaint that the complainant is a general and not a preferred creditor of the Suwannee River Bank.

5. That it appears from the allegations of said bill of complaint that the proceeds of the checks mentioned therein become commingled and unseparated from the funds of the Suwannee River Bank, and passed with such funds to the defendant, as receiver of said bank.

6. That it appears from the allegations of said bill of complaint that the title to the checks mentioned therein and the proceeds thereof, passed to the Suwannee River Bank, and that the relation, principal and agent has ended.

7. That it appears from the allegations of said bill of complaint that it was intended that the Suwannee River Bank make collection of the checks mentioned therein, place the proceeds of such collection in its own funds, and thereafter remit the proceeds thereof in the usual course of business.

8. That it appears from the allegations of the bill of complaint that the complainant did not select the Suwannee River Bank as his collecting agency in and about the making of collection of said checks.

9. That it appears from the allegations of said bill of complaint that Suwannee River Bank was selected to collect the checks mentioned therein by another bank.

10. That it appears from the allegations of said bill of complaint that the complainant used the Commercial Bank of Jasper, Florida, as his collecting agent in and about collecting proceeds of such checks mentioned therein, and that the Commercial Bank of Jasper, Florida, in the usual and ordinary course of business forwarded such checks to the Barnett National Bank of Jacksonville, Florida, for collection, and that the said Barnett National Bank used the Suwannee River Bank as its collecting agent for such items, and was authorized to collect and mingle funds coming from such collections with its own funds and thereafter remit to the Barnett National Bank and not to the complainant.

11. That the said bill of complaint fails to show facts that raise the relation of the Suwannee River Bank from creditor of the complainant to that of trustee.

12. That the said bill of complaint fails to show that the fund arising from the collection of the checks mentioned therein can be traced and located in the assets of the Suwannee River Bank.

13. That said bill of complaint shows that it was usual and customary for the Barnett National Bank, mentioned therein, to forward to Suwannee River Bank items for collection at White Springs, Florida, which usage and custom included the checks mentioned in the bill, and that such Suwannee River Bank, by usage and custom, would mingle the proceeds of such items with its own funds and remit to Barnett National Bank all of such proceeds of such items, which mingling and usage and custom, shows that no trust or fiduciary relation ever existed between the Suwannee River Bank and the complainant.

14. That such bill of complaint shows that the Barnett National Bank, mentioned therein, had no right to preference in regard to the subject matter of the bill for the reason that it occupied no trust relation to the complainant.

15. That the bill of complaint fails to state any relation between the complainant and the Suwannee River Bank through the Commercial Bank and the Barnett National Bank, both of which are mentioned therein.

16. That the fact that the Barnett National Bank, mentioned in such bill of complaint, did not allow the Suwannee River Bank any time or latitude in remitting collections made by the latter bank for the former

bank, did not create any trust relation between the complainant and the Suwannee River Bank.

17. That the fact that the Barnett National Bank kept no account with the Suwannee River Bank did not create any trust relation between the complainant and the Suwannee River Bank.

18. That the collection of the checks mentioned in the bill of complaint by the Suwannee River Bank from its customers, out of their accounts, did not appreciate, enhance or augment the funds coming into the bank by reason of said transaction.

19. That said bill fails to show that any of the funds and credits of the Suwannee River Bank on hand at the time it closed arose from the transaction mentioned therein.

20. That said bill fails to trace any of the funds arising from the checks mentioned therein into the hands of the Suwannee River Bank at the time it closed.

21. That it is not shown by said bill that the monies and credits of the Suwannee River Bank on hand at the time it closed consisted of the funds arising from the checks mentioned thereon.

22. That it is not shown by said bill that the monies and credits of the Suwannee River Bank on hand when it closed were enhanced or enlarged by the proceeds of the checks mentioned therein, or by either or any of such checks.

23. That said bill shows that there were other like transactions after the transaction set up therein, which would be preferred if the complainant's claim was pre-

ferred, and does not show sufficient money on hand to pay all of such transactions as preferred claims."

This demurrer was overruled and from that order defendant appealed.

The first question which we should determine is, "What relationship was created between the complainant and the Commercial Bank of Jasper, when the complainant indorsed and deposited with the bank the checks mentioned in the bill?" If the checks became the property of the bank and the relation of debtor and creditor was created between the bank and the complainant, as contended by appellant, the bill can not be sustained, and the complainant should be relegated to his remedy at law against the Commercial Bank of Jasper, or its agent, the Barnett National Bank of Jacksonville.

The ordinary relation existing between a bank and its customers is simply that of debtor and creditor at common law (1 Morse on Banks and Banking, 5th Ed., p. 540; Bank v. Millard, 10 Wall. 152, 19 L. Ed. 897; Engel v. O'Malley, 219 U. S. 128, 55 L. Ed. 128; Camp v. First Nat. Bank, 44 Fla. 497, 33 So. R. 241; Miami v. Shutts, 59 Fla. 462, 51 So. R. 929), and that is the law in this State at the present time, when the deposit consists of money.

In Brown v. People's B. for S. of St. Augustine, 59 Fla. 163, 52 So. 719, in a well considered opinion by Mr. Justice WHITFIELD, it was held in substance that where a check payable in another city was indorsed in blank and deposited with a bank to be credited to the depositor, receipt of the check by the bank *prima facie* carried title to the bank, and the relation of debtor and creditor was established between the depositor and the bank by the deposit. By such an indorsement and delivery of the check the depositor engaged that on due presentation the check would be paid, and if not honored, and the necessary proceedings on such

dishonor be duly taken, he would pay the amount to the holder, and this obligation was discharged when the check was paid. Furthermore, that the bank of deposit selected its own agent to collect the debt for it, and if after payment of the check a loss resulted, the depositor was not liable for such loss. But the Legislature in 1909 enacted a law that has been brought forward in Section 6834, Comp. Gen. Laws of Fla., as follows:

"When a check, draft, note or other negotiable instrument is deposited in a bank for credit, or for collection, it shall be considered due diligence on the part of the bank in the collection of any check, draft, note or other negotiable instrument, so deposited, to forward en route the same without delay in the usual commercial way in use according to the regular course of business of banks, and the maker, endorser, guarantor or surety of any check, draft, note or other negotiable instrument so deposited, shall be liable to the bank until actual final payment is received, and when a bank receives for collection any check, draft, note or other negotiable instrument and forwards the same for collection as herein provided it shall only be liable after actual final payment is received by it, except in case of want of due diligence on its part as aforesaid."

That legislation was referred to in the Brown-Bank case, *supra,* but did not affect it because the statute was enacted after the institution of the action. As stated in the case just referred to, this statute "was manifestly designed to change the existing rule." In the case of Montsdoca v. The Highlands Bank & Trust Co., 85 Fla. 158, 95 So. R. 666, this Court in an opinion prepared by Mr. Justice WHITFIELD, stated that the statute above quoted "makes the bank in which a check is deposited for deposit or collection liable

only 'after final payment is received by it,' unless it is negligent in its duty 'according to the regular course of business of banks' '' and that the ''statute controls, and the decision in Brown v. People's Bank for Savings of St. Augustine, 59 Fla. 163, 52 So. R. 719, 52 L. R. A. (N. S.) 608, is not applicable.'' In other words, the statute has changed the rule so that now the relationship of the depositor of commercial paper with his bank of deposit, even though the deposit is not for collection, is in the nature of principal and agent, until such paper has been collected and payment actually received by the bank, in which event, the depositor becomes the creditor of his bank, the debtor.

The proceeds of the checks not having been actually received by the Commercial Bank of Jasper, the relationship of debtor and creditor, as a result of the alleged deposit, did not come into being.

It, therefore, becomes necessary for us to determine whether the Suwannee River Bank, after charging the said checks to the respective accounts of the drawers of same, held such funds as trustee for the complainant.

In Federal Reserve Bank of Richmond v. Malloy, reported in 264 U. S. 160, 68 L. Ed. 617, Malloy Bros. of Quitman, Ga., brought an action against the bank to recover the amount of a check drawn to their order upon the Bank of Lumber Bridge, N. C. The check was indorsed by the payees and deposited with the Perry Banking Company of Perry, Fla., for collection and credit. The check was indorsed and transmitted by the Perry Banking Company to a bank in Jacksonville, which in turn, indorsed and transmitted it on account of the Atlanta Federal Reserve Bank to a bank in Atlanta, Ga., and by the latter bank it was sent for collection to the Federal Reserve Bank of Richmond. The Richmond bank sent it with other checks to the Lumber Bridge Bank (drawer's bank) for collection and

return. The Lumber Bridge Bank, in due course, stamped it "PAID" and charged it to the account of the drawer and on the same day transmitted to the bank at Richmond its draft on a bank in Greensboro, N. C., for the amount of the checks including the one in question. The draft was received by the Richmond bank and was immediately sent to the Greensboro bank for payment and the same was not honored because of insufficient funds to the credit of the Lumber Bridge bank. These facts are recited because of their similarity to the facts in the instant case. The Supreme Court of the United States had before it the Florida statute quoted above and held: "This statute had the effect of imparting the 'Massachusetts rule' into the contract, with the result that the initial bank had implied authority to entrust the collection of the check to a sub-agent, and that sub-agent, in turn, to another." In those States in which the so-called "Massachusetts rule" has been followed, the courts have held that the initial bank by the mere fact of deposit for collection, is authorized to employ sub-agents of the owner, who become directly responsible to him for their defaults. Federal Reserve Bank of Richmond v. Malloy, 264 U. S. 160, 68 L. Ed. 617; 3 R. C. L. 622, Sec. 251.

In Atlantic National Bank of Jacksonville v. Pratt, Receiver, 95 Fla. 822, 116 So. R. 635, this Court committed itself to the rule that where one bank sends items for collection and remittance to another bank, and the collecting bank makes collections from *other banks* or persons, and remits to forwarding bank checks of collecting bank on other banks for the amount collected, but such checks are not paid in due course because of the failure of the collecting bank after making the collections and after remitting its checks therefor, but before the checks of the collecting bank are paid and there was no commingling of funds *by consent*

and no reciprocal accounts or deposits between the two banks, collecting bank having an account with a balance to its credit with forwarding bank, but forwarding bank having no account with collecting bank, forwarding bank is entitled to a preference in payment by the receiver of collecting bank for the collections made.

The Atlantic National Bank-Pratt case was followed in Tunnicliffe, as Receiver, v. The City Nat. Bank and Tr. Co., 118 So. R. 319, 96 Fla. 544.

Applying the rule stated in the Pratt case, any bank receiving the checks of the complainant for collection and remittance under the implied authority given to the Commercial Bank of Jasper when the deposit was made, held them as agent and in trust for the complainant, and when the collections were made, the sums so collected were impressed with a trust in favor of the complainant.

Certainly, there is no reason why this rule may not be invoked by an individual who transmits through banks for collection and remittance commercial paper owned by him, as well as by a bank that transmits such paper for such purpose, whether for itself as owner or as agent for someone else.

The fact that the checks transmitted by the Barnett National Bank to the Suwannee River Bank were drawn upon the latter bank did not change the status of such bank as an agent for collection and remittance, and that being true a trust relationship exists. Federal Reserve Bank of Richmond v. Peters, 139 Va. 45, 123 S. E. 379, 42 A. L. R. 742; Bank of Poplar Bluff v. Millspaugh (Mo.) 275 S. W. R. 579,, 281 S. W. R. 733, 47 A. L. R. 754; State Nat. Bank v. First Nat. Bank (Ark.) 187 S. W. R. 673; Goodyear Tire & Rubber Co. v. Hanover State Bank, 109 Kan. 772, 21 A. L. R. 677, 204 Pac. R. 992; Messinger v. Carroll Tr. & Sav. Bank, 193 Iowa 608, 187 N. W. R. 545; State v. Bank

of Commerce, 61 Neb. 181, 52 L. R. A. 858; Kinney v. Paine, 68 Miss. 258, 8 So. R. 747.

This is not the rule in a number of states but the reasoning of the Court in Federal Reserve Bank v. Peters, *supra,* and also in Bank v. Millspaugh, 281 S. W. R. 733, 47 A. L. R. 754; Federal Reserve Bank of Richmond v. Malloy, *supra,* and the other cases cited, appeal to us as being sound. For decisions pro and con see notes in 42 A. L. R. 754, 24 A. L. R. 1152, and 47 A. L. R. 761.

The mingling of trust money with that of the trustee does not defeat the owner's title because there is no way to identify money. This Court does not agree to a contention that a commingling of the proceeds of the checks with the funds of the Suwannee River Bank altered the position of complainant. Such mingling of funds extended the trust to all the funds of the bank. Federal Reserve Bank v. Peters, and other citations, *supra.* See also Glidden v. Gutelius, 119 So. R. 140.

The allegations of the bill that are well pleaded being admitted by the demurrer, and we being of the opinion that it states a case for equitable relief, the demurrer was properly overruled and the order of the lower court should be affirmed, with directions that it proceed in accordance with the views herein expressed.

Affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the order of the court below should be, and the same is hereby affirmed.

TERRELL, C. J., AND WHITFIELD, ELLIS, STRUM, BROWN AND BUFORD, J. J., concur.