144 So.2d 74 (1962)
SORRELLS BROS. PACKING CO., INC., Appellant,
v.
UNION STATE BANK, a Corporation, Appellee.
No. 2845.
District Court of Appeal of Florida. Second District.
August 1, 1962.
Rehearing Denied September 5, 1962.
E.D. Treadwell, Jr., of Treadwell & Treadwell, Arcadia, for appellant.
*75 William B. Holland, Winter Haven, for appellee.
WILLIS, BEN C., Associate Judge.
The appellant, Sorrells Bros. Packing Co., hereafter called Sorrells, is a Florida corporation against whom the trial court entered a final summary judgment in favor of the appellee Union State Bank, a Texas banking corporation of Carrizo Springs, Texas, hereafter called Union State. The facts pertinent to this appeal do not appear to be in any substantial conflict.
On June 13, 1959, Sorrells issued its check in the sum of $538.00 payable to one H.C. Frazier and drawn on a bank at Arcadia, Florida. On June 22, 1959, the payee H.C. Frazier deposited the check at Union State to the account of Winter Garden Truck Brokerage Co. This was then and had been for some time an active account used by H.C. Frazier and by his brother, W.G. Frazier. When deposited the check bore an indorsement carrying with it the language: "For deposit only. H.C. Frazier. For deposit only in Union State Bank, Carrizo Springs, Texas. Winter Garden Truck Brokerage Co."
The deposit receipt issued by Union State recited:
"In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This bank or its correspondents may send items directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited."
However, Union State almost immediately treated the deposit as a cash item and permitted H.C. Frazier to withdraw the amount of the deposit by a check drawn on it before Sorrells' check could be cleared.
On June 26, 1959, H.C. Frazier sent a telegram to Sorrells requesting that it stop payment on the check it had previously issued to him, describing it by number and amount, and also requesting that a new check be issued and sent to him at a certain box number at Haines City, Florida. Sorrells honored the request, stopping payment on the first check and forwarding a duplicate as specified by Frazier. The duplicate was received by Frazier, presented and cleared in due course.
The check deposited with Union State was duly presented to the Florida bank on which it was drawn, but of course payment was refused and the check was returned to Union State with the notation "payment stopped."
Until the check was returned to it Union State had no notice or knowledge of the request of H.C. Frazier to Sorrells or of any of the other circumstances leading to the "stop payment" order.
Union State contends that it was a holder in due course of the negotiable check and that it is entitled to recover the face amount of same from the maker. It contends that it purchased the paper for value when it treated it as a cash item and allowed the depositor to draw out the amount represented by the deposit of the check. In short, it takes the position that despite the language of the indorsement and of the deposit receipt, which would establish a relationship of principal and agent as between the depositor and the depository bank, the permitted withdrawal of the amount represented by the deposit of the check altered that relationship so that the bank became the owner of the check free of the consequences of any act of the depositor payee of the check. It relies upon Lowrance Motor Co. v. First National Bank of Auburn, C.A. 5, 1957, 238 F.2d 625, 59 *76 A.L.R.2d 1164; and on cases cited and digested in Annotation in 59 A.L.R.2d, pp. 1173-1197, including American Fruit Growers, Inc. v. Chase National Bank, C.C.A. 5, 1929, 30 F.2d 936, applying Florida law.
The trial court held that Union State was a holder in due course and entitled to recover from Sorrells the face amount of the check with interest and costs. The appellant Sorrells predicates its claim for a reversal solely on the rulings pronounced in Johnson v. F.M. Leonard & Co., 1933, 108 Fla. 416, 146 So. 202, and contends that this case is controlling.
We will pause at this time to note that the deposit was made in Texas and the relationships between depositor and depository would be governed by Texas law. However, the case has been briefed and argued here and apparently litigated in the trial court without reference to any special provisions of Texas law. At oral argument before this Court, counsel for the appellee, in response to an inquiry by one of the judges, stated that his research had indicated that both Texas and Florida had the Uniform Negotiable Instruments Law and that the pertinent law of the two states is the same. We have not independently researched the question and will proceed on the premise, apparently conceded by all parties, that the case may be considered as if all transactions and relationships had been governed by the law prevailing in Florida.
In the Johnson case, last cited, the facts are somewhat similar to the case at bar. The liquidator of a defunct bank sued the drawer of a check which had been deposited in the bank by the payee of the check and credited to his account. The check had been indorsed in blank and the deposit slip which was issued set forth that in receiving items for deposit or collection the bank acts only as the depositor's collecting agent and that all items are credited subject to final payment in cash or solvent credits. Thereafter, when presented for payment, the deposited check was dishonored because the drawer, at the request of the drawee, had stopped payment.
After reciting the substance of the facts set forth in the preceding paragraph the Supreme Court of Florida held:
"Our conclusion is that the maker or drawer of the check is not responsible to the bank of deposit under the circumstances above stated, payment of the check having been stopped by the payee before collection was made by the bank of deposit."
Among the authorities cited in support of the foregoing quotation are Edwards v. Lewis, 1929, 98 Fla. 956, 124 So. 746 and Sec. 6834, C.G.L. (now Sec. 674.74, F.S. 1961, F.S.A.[1] In Edwards v. Lewis, supra, the Court observed that prior to the enactment in 1909 of Sec. 6834, C.G.L., it had been held in Brown v. Peoples B. of St. Augustine, 1910, 59 Fla. 163, 52 So. 719, 52 L.R.A., N.S., 608 that where a check payable in another city was indorsed in blank and deposited with a bank to be credited to the depositor, receipt of the check by the bank prima facie carried title to the bank and the relation of debtor and creditor was established between the depositor and the bank by the deposit. However, the Court held that the mentioned statute *77 has changed the rule so that now the depositor of commercial paper with his bank of deposit, even though the deposit is not for collection, is in the nature of principal and agent, until such paper has been collected and payment actually received by the bank, in which event, the depositor becomes the creditor of his bank, the debtor.
It is contended by Union State that the rule of the Johnson case is applicable only when the depository bank has merely credited the sum of the check to the account of the payee and such sum has not been withdrawn as a cash item might be. A different rule is said to prevail when there has been such a withdrawal and Bland v. Fidelity Trust Co., 1916, 71 Fla. 499, 71 So. 630, L.R.A. 1916F, 209, is cited as supporting this conclusion. In the case last cited a bank received a number of unmatured promissory notes made by the defendant and gave the payees credit for the same on its books. Before maturity of the notes about half of the amount of the credit was allowed to be withdrawn by the payees. On a suit by the bank against the makers of the notes, the defendant sought to interpose as defenses some defects or infirmities in the note and the payee's title thereto, claiming the bank was not a holder in due course because there was no valuable consideration for the notes. The Court affirmed the trial court's verdict for the plaintiff and held:
"If a mere credit upon the books of a bank does not of itself amount to the payment of a valuable consideration, the withdrawal by check of a substantial part of the amount so credited is such payment."
Thus the court there held that the withdrawals by the payee constituted a valuable consideration for the notes which would constitute the bank a holder in due course against whom the defenses asserted would not be available. However, in that case there were no dealings by the payee with the maker subsequent to the deposit.
The real point in this case is whether or not the action of the payee, Frazier, in requesting that payment be stopped on the check, is binding on the plaintiff depository bank.
We think that it is not and that Johnson v. F.M. Leonard & Co., supra, is distinguishable from the case at bar in that here the payee had withdrawn funds from the depository and in the cited case the face amount of the check had been merely credited to the payee's account. The weight of authority and the better reasoned opinions on similar questions in this country would lead us to conclude that Union State Bank was a holder in due course of the check involved and was freed of any relationship with the payee, Frazier, whereby the latter's misconduct, in which Union Bank in no way participated, would be binding on such depository. We do not find that decisions of Florida appellate courts are out of harmony with this conclusion.
It seems established beyond dispute that when a bank has received a negotiable instrument from its depositor and merely credited the proceeds to his account, the bank does not, without more, become a holder in due course of the instrument. Andrews v. First Nat. Bank, 1934, 115 Fla. 67, 155 So. 143; Florida Power & Light Co. v. Newsom, 1933, 111 Fla. 154, 149 So. 621; Johnson v. F.M. Leonard & Co., supra; Bland v. Fidelity Trust Co., supra; American Fruit Growers v. Chase Nat. Bank of City of New York, C.C.A. 5, 1929, 30 F.2d 936. Equally established is the proposition that when the bank gives value it becomes a holder in due course of the instrument. Value is given when the bank honors the depositor's checks withdrawing the amount deposited before it has received notice of any defect in the instrument. See Sec. 674.54 (3), Fla. Stat., F.S.A.; American Fruit Growers v. Chase Nat. Bank, supra; Lowrance Motor Co. v. First Nat. Bank, C.A. 5, Ala., 1957, 238 F.2d 625; annotation *78 59 A.L.R.2d 1173; and 8 Am.Jur., Bills and Notes, Sec. 442.
In the Lowrance case, supra, the drawer stopped payment on the checks in question, but before the bank received notification of the stop order, it had credited the account of its depositor, the payee of the checks, and paid out substantially the entire proceeds of the checks to its depositor. Suit by the bank against the drawer disclosed that payment was stopped by the drawer because a check he had received from the payee of the checks in question had been dishonored by reason of insufficient funds, and also because in an automobile purchase transaction, payment for which was made with the checks in question, the drawer discovered that the automobiles he had purchased from the payee were under an undisclosed mortgage to a finance company. The bank paid the proceeds to the depositor-payee on February 10. The maker on February 12, wired the payee that he had stopped payment on the checks. The payee notified the bank of this on February 15. Evidence also disclosed that the deposit slip contained words to the effect that the bank was only acting as depositor's collecting agent (as in the instant case).
Summary judgment for the bank was affirmed, the court stating:
"Under these undisputed facts we think the Bank was the holder for value in due course of the four checks and was entitled to recover from Lowrance. The parties differ sharply as to whether Moore's endorsements on the four Lowrance checks were restrictive endorsements. We do not find it necessary to decide this point and will assume that the endorsements were restrictive. Nevertheless, it appearing without dispute that the Bank did pay value for the checks by giving immediate unrestricted credit and by permitting the credit to be withdrawn, the relationship between the parties was fixed by these undisputed facts rather than by what was written in the endorsement or on the deposit slip."
A distinction may be drawn between the Lowrance case, discussed above, and the instant one. In Lowrance, payment was stopped by the drawer because of certain facts he had become aware of concerning the dealings of his payee. In our case, payment was likewise stopped by the drawer but upon the request of the payee, Frazier, who also requested that a new check be issued and sent to him. This was done and the new check subsequently presented and cleared. Still, the first check was credited to the payee's account by the bank, and the amount of the deposit was subsequently withdrawn by the payee before the check could be cleared and before the bank received notice of the stop order.
It is notable that in the Johnson and Bland cases, supra, and in the cases discussed in the latter, there is an absence of the circumstances that a depository bank had allowed the depositor to withdraw funds on the strength of the credit given him. Apparently, this distinction from the case here is significant because in the situation such as that present in the Johnson case, supra, title to the paper had not passed to the bank and it had not, therefore, become a holder in due course thereof (see Sec. 674.54, Fla. Stat., F.S.A.). Because of the statute then, the only relation that could exist between depositor and bank, in Johnson, is one of principal and agent and, it is submitted, this is true notwithstanding the fact that the payee-depositor requested the drawer to stop payment on the instrument. See 146 So. at p. 203.
This seems to be the theory under which the bank was allowed recovery in Lowrance, supra, and the cases annotated in 59 A.L.R. 2d beginning at p. 1174. In the Lowrance case, the court quoted from the Alabama case of Sherrill v. Merchants' & Mechanics' *79 Trust & Savings Bank, 1915, 195 Ala. 175, 70 So. 723, 725, where the court stated:
"A bank does not become a bona fide purchaser for value and without notice of a negotiable paper by simply discounting it for one not its debtor at the time and placing the amount to the credit of the holder by way of deposit. In such circumstances the act of discounting and of crediting only effects to establish the relation of debtor and creditor between the depositor and the bank; but, if the amount deposited to the checking account of the customer is exhausted before maturity or before notice of any defect, then the bank is a purchaser for value. * * *"
Also see Pike v. First National Bank of Rome, 1959, 99 Ga. App. 598, 109 S.E.2d 620, where it is said:
"* * * It follows that while, where nothing else appears, a deposit to the credit of the depositor under a collection agreement gives rise to the presumption that there is an agency relation rather than a debtor creditor relation, and while, between the parties themselves, the bank may always charge back the uncollected check against its depositor whether it has advanced funds thereon or not, nevertheless, the presumption of agency relationship, so far as third parties are concerned, only holds so long as no contrary agreement between the bank and the depositor is shown. Proof that the bank did in fact not only credit the fund to the depositor but that it allowed the depositor to draw against that credit is, according to the better rule, conclusive evidence of a contrary agreement. * * * No matter what the deposit agreement was initially, when the bank did in fact credit the deposit to its customer, and did in fact thereafter permit the customer to withdraw the fund before collection, and the customer did withdraw the fund, the bank became a holder for value of the check as to the amount withdrawn, so as to be able to enforce payment against the drawer thereof. That this is the majority rule in most of the jurisdictions. * * *."
The Legislature of Florida has established, by Sec. 674.74, Fla. Stat., F.S.A., the rule that the relationship of the depositor of commercial paper with his bank of deposit, even though the deposit is not for collection, is in the nature of principal and agent, until such paper has been collected and payment actually received by the bank, in which event the depositor becomes the creditor of his bank, the debtor. Edwards v. Lewis, supra. Regardless of the initial deposit agreement, however, when the bank credits the deposit to its customer and thereafter permits the depositor to withdraw the fund before collection or notice of stop order or other defect, and the customer does, in fact, withdraw the fund, the depository bank becomes a holder for value of the check as to the amount withdrawn and may enforce payment against the drawer thereof.
Therefore, in the case at bar, the relationship between the bank and the payee of the check in question would have been, by operation of Sec. 674.74, supra, that of principal and agent, absent a showing of any more than a book credit to the depositor's account by the bank. Under the facts presented, however, the bank became the holder for value of the instrument and was entitled to enforce payment from the drawer regardless of whether the payee was the instigator of the stop order because, as the West Virginia court said in Elk Valley Bank v. State Road Commission, 1932, 111 W. Va. 527, 162 S.E. 889, 891: "In accepting a check drawn upon another bank, a bank acts generally upon its knowledge of and confidence in both the drawer and payee. Relator acted innocently. The road commission was in a position to have ascertained from contractors what disposition had been made of the original *80 check. Presumptively, there was error in the delivery of the original voucher to the contractors; assuredly, the issuance and delivery of a duplicate without first ascertaining if an innocent third party would be affected thereby was not curative of the situation. Relator's plight is the result of conduct making possible its acceptance of the state's voucher; hence, `when one of two innocent persons  that is, persons each guiltless of an intentional moral wrong  must suffer a loss, it must be borne by that one of them who by his conduct, acts, or omissions has rendered the injury possible.' * * *
"Relator, being an innocent purchaser for value in due course, has established a clear legal right to receive payment, * *." See also generally, 5 A Banks and Banking, the Michie Co., Sec. 25, et seq.
The judgment appealed from be and the same is hereby affirmed.
Affirmed.
SHANNON, C.J., and WHITE, J., concur.

ON PETITION FOR REHEARING
PER CURIAM.
The appellant asserts in its petition for rehearing that this Court overlooked and failed to consider the case of Cooke, et al. v. Commercial Bank of Miami (App. 3rd Dist.) 119 So.2d 732, which appellant had cited in its reply brief and urged as a controlling precedent in its favor. The language in our opinion:
"The appellant Sorrells predicates its claim for a reversal solely on the rulings pronounced in Johnson v. F.M. Leonard & Co., 1933, 108 Fla. 416, 146 So. 202, and contends that this case is controlling."
is referred to as indicating that we did not consider the Cooke case, supra.
Such an inference might be drawn from the quoted language, and for that reason we would add that we did fully consider the cited case, but did not find it to be in point. It deals with the obligations of a drawee bank to give effect to "stop payment" orders of the maker or drawer of a check. The rights of a holder in due course of a check against the maker were in no way involved in the cited case, and no rulings therein are contrary to ours in this case.
Accordingly, the petition for rehearing is denied.
WILLIS, BEN C., Associate Judge, and SHANNON and WHITE, JJ., concur.
NOTES
[1] F.S. Sec. 674.74, F.S.A. "`Due diligence' by bank. When a check, draft, note or other negotiable instrument is deposited in a bank for credit, or for collection, it shall be considered due diligence on the part of the bank in the collection of any check, draft, note or other negotiable instrument so deposited, to forward en route the same without delay in the usual commercial way in use according to the regular course of business of banks, and the maker, endorser, guarantor or surety of any check, draft, note or other negotiable instrument, so deposited, shall be liable to the bank until actual final payment is received. When a bank receives for collection any check, draft, note or other negotiable instrument and forwards the same for collection, as herein provided, it shall only be liable after actual final payment is received by it, except in case of want of due diligence on its part as aforesaid."