MICHAEL BRENNAN, ADMINISTRATOR OF THE ESTATE OF THOMAS WALSH, DECEASED, v. MERCHANTS' AND MANUFACTURERS' NATIONAL BANK OF DETROIT.

| 62 | 343 |
|----|-----|
| 116 | 284 |
| 62 | 343 |
| 149 | ³485 |

*Bank check—Indorsed in blank by payee's authorized agent—And delivered to widow after payee's death—Which occurred on evening of day check was received and indorsed by agent—Payment of by bank on presentment by such agent for widow—Without notice or knowledge of payee's death—Will be protected in suit against bank by payee's administrator as holder of check—To whom it was delivered by drawer after its receipt by him from the bank on settlement—It having been charged up in his account—Agent's indorsement had like effect as if made by payee—And payment was authorized by apparent condition of the paper—For which payee was responsible—Bank not liable on unaccepted check unless by way of estoppel—Acceptance must be in writing under How. Stat. sec. 1583—Such paper not assignable under Id. sec. 7344—Unaccepted check—Payee has no interest in drawer's funds—Cannot maintain suit thereon against drawee.*

1. A merchant delivered his check in payment for a bill of goods to the vendor's agent, who had authority to indorse and use the same for his principal. The agent *at once* indorsed the check *in blank,* but did not present it for payment, and on the night of the day he received it his principal died. He delivered the paper to the widow, and five days afterwards, at her request, collected the same, paying her the proceeds, the bank having no notice or knowledge of the death of her husband.

   The check was charged up in the drawer's account, and returned to him, and he delivered it to the administrator of the husband's estate, who sued the bank, counting specially, in his representative character, as *holder* of the check, and on the common counts. The trial court directed a verdict for the plaintiff for the face of the check and interest.

   *Held,* that the agent's indorsement had the same effect as if made by the principal, and that the payment was authorized by the apparent condition of the paper, for which the payee was responsible, and was protected.

2. A bank is not liable on a check until certified or accepted, in the absence of some recognition by estoppel, which acceptance must be in *writing* under How. Stat. § 1583; and such a paper is not assignable under How. Stat. § 7344.

3. Under the law as settled in this State the payee of an *unaccepted* check has no interest in the drawer's funds, and cannot maintain an action against the bank thereon. *Grammel v. Carmer*, 55 Mich. 201.

Error to superior court of Detroit. (Chipman, J.) Argued June 24, 1886. Decided July 8, 1886.

Assumpsit. Defendant brings error. Reversed. The facts are stated in head-note 1.

*D. C. Holbrook*, for appellant :

The indorsement in blank of the check by the duly authorized agent of the payee was in *effect* his indorsement, and *prima facie* a valid assignment of the paper, so far as the bank was concerned, whether Walsh was dead or alive; and whoever held it must be presumed to be a *bona fide* holder : 1 Pars. on Notes and Bills, 255 ; *Inman v. Foster*, 8 Wend. 602; *Levy v. Bank of America*, 24 La. Ann. 220 ; 2 Pars. on Notes and Bills, 288.

Phillips, being the general agent of Walsh, and holding the check as such agent, had a right to collect it after the death of Walsh : *Moore v. Hall*, 48 Mich. 143.

The bank's payment of the check after the death of Walsh, it being ignorant of such fact, will protect it in this suit : *Tait v. Hilbert*, 2 Ves. Jr. 118 ; Chitty on Bills (American ed.), 429 ; *Second National Bank v. Williams*, 13 Mich. 282; 2 Daniel on Neg. Inst. § 1582 ; Morse on Banking, 257, 278 ; Grant on Banking, 48.

A check is a bill of exchange (Byles on Bills, 10 ; *Murray v. Judah*, 6 Cow. 484; *Chapman v. White*, 6 N. Y. 417; *Harker v. Anderson*, 21 Wend. 373 ; Edwards on Bills, 412 ; 2 Daniel on Neg. Inst. § 1566 : *Grammel v. Carmer*, 55 Mich. 201), and can only be accepted in writing in this State (How. Stat. § 1583).

*John C. Donnelly* and *J. T. Keena*, for plaintiff : ⸜

Is the authority of an agent revoked by the death of the principal, and are his dealings thereafter, although with parties ignorant of such death, *void* as against the representatives of the deceased ? · The doctrine of the common law answers in the affirmative, while under the civil law *such* dealings are binding : *Wallace v. Cook*, 5 Esp. 117; *Campanari v. Woodburn*, 15 C. B. (80 Eng. Com. Law) 400; *Houstoun v. Robertson*, 6 Taunt. 448 ; *Blades v. Free*, 9 B.

& C. 167 ; Ewell's Evans on Agency, 115 ; Story on Agency, § 488 ; Parsons on Contracts, 70 ; 2 Kent's Com. 643 (star paging) ; Morse on Banking, 278.

This common-law doctrine has been followed by all of the states of the Union where it has come up for adjudication (excepting those where the civil law is in force), except Pennsylvania and Missouri : *Scruggs v. Driver's Executors*, 31 Ala. 274 ; *Coney v. Sanders*, 28 Geo. 511 ; *Marlett v. Jackman*, 3 Allen, 287 ; *Rigs v. Cage*, 2 Humph. 350 ; *Davis v. Windsor Savings Bank*, 46 Vt. 728 ; *Clayton v. Merrett*, 52 Miss. 353 ; *Travers v. Crane*, 15 Cal. 12 ; *Cleveland v. Williams*, 29 Tex. 214 ; *Mich. Ins. Co. v. Leavenworth*, 30 Vt. 11 ; Story on Agency, 488.

Death being a public fact, all men are bound to know it, and the presumption is that third persons have notice of it, because no notice is required to be given where a fact is of a public nature : *Griswold v. Waddington*, 15 Johns. 57 ; *Marlett v. Jackman*, 3 Allen, 287.

The indorsement by Phillips before the death of Walsh was of no force or effect without delivery : *Kinzie v. Farmers' & Mechanics' Bank*, 2 Doug. 114 ; *Burson v. Huntington*, 21 Mich. 415.

The indorsee acquires no title until delivery, and if there is no delivery until after the indorser is dead, the paper can never be delivered as his indorsement : *Woodford v. Dorwin*, 3 Vt. 82 ; *Chamberlain v. Hopps*, 8 Id. 94 ; *Mich. Ins. Co. v. Leavenworth*, 30 Id. 11 ; 2 Kent's Com. 643 (star paging).

CAMPBELL, C. J.   This is a suit to recover from a bank money that it had before paid on the same check.

On the sixteenth day of September, 1885, Mr. McLennan, a Detroit business man, purchased certain merchandise of Thomas Walsh, and gave his check on defendant, the Merchants' & Manufacturers' National Bank of Detroit, for the amount, payable to Walsh's order.

Walsh had a clerk named Phillips, who was his general agent, and had authority to receive, indorse, and otherwise deal with negotiable paper for Walsh, and this check was put in his hands in payment for the goods by McLennan. Phillips at once put upon it a blank indorsement, but did not present it that day. That night Walsh died. Phillips gave the check to his widow, and on the twenty-first of Septem-

ber, at her request, he presented it to defendant for payment, and it was paid to Phillips, and the money given to Mrs. Walsh. At that time defendant had no knowledge of Walsh's death.

On McLennan's periodical settlement with the bank this check was returned with the rest as paid. He subsequently handed the check back to plaintiff, who sues the bank upon it. Why he returned it is not shown.

Plaintiff sued specially as holder of the check, and added the common counts. The court below gave him judgment.

In our opinion, the ruling was erroneous. As appears from the case, and as was admitted on the argument, the indorsement by Phillips has the same effect as if made by Walsh. It is undoubtedly true that, generally, an indorsement not delivered is not sufficient to create the responsibility of an indorser. But where a person has, by his own act, given negotiability in appearance to an instrument drawn by another, which is an existing contract and valid in his hands, and it gets into circulation, and is paid by the person on whom it is drawn, without notice of anything wrong, the payment will be protected. The bank in this case acted on the faith of an indorsement which was put upon the check by Walsh's authority, and made the check payable to bearer. If it had been lost in that condition, any *bona fide* purchaser could have collected it.

There is no authority that we have found which holds that the death of a payee or indorser after a note has been negotiated can affect its negotiability further or prevent the drawee from safely paying it. A different question might have arisen in case of the death of the drawer. But there is little dispute that even then a payment of a genuine check in the due course of business, by the bank, in ignorance of his death, would be protected. Byles, Bills, 24; Chit. Bills, 429; 2 Pars. Notes & Bills, 82; 2 Daniel, Notes & Bills, § 1618a. And while there is some authority for holding that death, when known to the banker, revokes the check, so far as the drawer is concerned, the authorities, such as they are, go no further.

Here the check itself was undoubtedly good, and bound the drawer. It had been made payable to bearer before Walsh's death, and the bank knew nothing to impeach that condition. The payment was authorized by the apparent condition of the paper, for which Walsh was responsible, and was protected. Daniel, Notes & Bills, § 1582, and citations.

This is enough to dispose of the case, but there is another equally conclusive answer to the suit. The plaintiff claims entirely as holder of this check. There is nothing else in the case that he can rely on, whatever may be the theory of the suit.

A bank is not liable on a check unless certified or accepted. Checks are sometimes certified, which amounts to an acceptance; but that is the only form in which a liability can very well be created, unless, perhaps, by some recognition by estoppel, and, under our statutes, every acceptance must be in writing. How. Stat. § 1583.

Our statutes concerning the assignment of choses in action expressly except negotiable paper. How. Stat. § 7344; *Matteson v. Morris*, 40 Mich. 55; *Redmond v. Stansbury*, 24 Id. 447; *Robinson v. Wilkinson*, 38 Id. 301.

If the payment of the check was wrongful (which, however, we think it was not), Mr. McLennan may have had a right of action; but it is not set up in the declaration, and is not shown to have been assigned to plaintiff. All that he did was to hand back the paid check to plaintiff, with such rights as that check had lawfully attached to it, and no more.

Some cases were cited from Pennsylvania and elsewhere, which purport to be based on a conjecture thrown out by Judge Davis in *Bank of the Republic v. Millard*, 10 Wall. 152, the decision in which seems to us not supported at all by the case itself, and inconsistent with it. That case held that where a check on a banker had been paid on a forged indorsement, the right holder had no action on the bank to recover the same money over again. But a query was put whether, if the payment had been allowed in settlement with the drawer, the bank would not hold the fund for the payee instead of the drawer. But the court had already held that

such a payment was a misappropriation of the drawer's funds, and the money would still be subject to his order, as if not drawn, and it is not obvious how the settlement made by mistake could change the case. Mr. Morse, in his treatise on Banking, regards the case in 10 Wall. as not warranting any such inference as was drawn by the cases cited before us on the argument. Upon the only theory suggested, which is that such an arrangement amounts to an acceptance, this would be contrary to our statute, which does not allow a parol acceptance unless there was some conduct which would have an equivalent effect.

Whatever force may have been given to the conjectural doubt of Judge Davis in the case in 10 Wall. has been entirely destroyed by the subsequent carefully considered action of the same court in *First Nat. Bank v. Whitman*, 94 U. S. 343, where it was decided that there was no action in any case in favor of the true owner of a check against the bank where the bank had paid it on a forged indorsement, and that the fact that it had been included in settlements made no difference. This puts an end to any supposed favoring of the contrary doctrine in *Bank of the Republic v. Millard*, which is distinctly affirmed, while the other inference is denied, and reasons given for its fallacy.

Our rulings upon the relations of banks and depositors have always denied any interest of the payee of an unaccepted check in the drawer's funds in bank, and have followed those of the United States Supreme Court. *Second Nat. Bank v. Williams*, 13 Mich. 282; *Grammel v. Carmer*, 55 Id. 201.

In England the same doctrine is well established, not only at law, but in equity. In *Hopkinson v. Forster*, 19 Eq. Cas. 74, a bank filed an interpleader bill against various claimants of a fund, including holders of drafts not accepted, and it was held they had no claim against the bank, at law or in equity, and must be dismissed from the controversy.

We see no ground on which the judgment can be supported, and it must be reversed, with costs.

The other Justices concurred.