ELK VALLEY BANK *v.* STATE ROAD COMMISSION *et al.*

(No. 7250)

Submitted February 9, 1932.    Decided February 16, 1932.

*Poffenbarger & Poffenbarger,* for relator.

*Howard B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondents.

LIVELY, JUDGE:

Relator, Elk Valley Bank, seeks, by mandamus directed to members of the State Road Commission and the Auditor

and Treasurer of this State, to compel payment of a state check in its possession.

The following allegations appear in relator's petition: Markle, Coleman, Smith and Young (hereinafter referred to as "contractors") had contracted with the state road commission to build a state road; and on September 8, 1930, contractors deposited with relator, engaged in general banking business in the town of Clay, a state warrant, dated September 6, 1930, drawn upon Dollar Savings & Trust Company at Wheeling, payable to contractors, duly signed by the auditor and treasurer of the State of West Virginia, payable out of "appropriation for State Road Commission distribution road fund," and endorsed by contractors. The check was accepted by relator; the amount thereof ($680.54) placed to the credit of the contractors; and the check placed in process of collection through the Kanawha National Bank at Charleston. On September 19, 1930, the check was again received by relator, together with a protest certificate dated September 12, 1930, bearing the notation "Payment stopped."

At the time that contractors deposited the check, relator issued its cashier's check in the amount of $159.30 in exchange for contractors' check drawn against their account in relator's bank; and on the same day, a check, drawn by contractors, was paid by relator out of said deposit. Subsequently, but prior to notice that payment had been stopped, relator paid other checks drawn by contractors against their acount with relator, aggregating an amount which exceeded the deposit and balance by the sum of five cents. After receipt of notice that payment had been stopped, relator accepted from contractors their promissory note in the amount of the check, but retained said check, the note having been taken "to prevent the showing of an overdraft" in contractor's account.

Relator charges it is informed that W. S. Johnson, State Treasurer, at the instance of the road commission, ordered the drawee bank to stop payment on September 8, 1930; and on September 13, 1930, a duplicate check—in the same amount as the original and payable to contractors—was issued, which has been paid and shows the endorsement of the contractors

by C. C. Coleman and J. Thomas Reed, representatives of contractors' surety, which had, prior to September 8, 1930, taken over the contractors' work upon their failure to complete same and to whom the amounts then due said contractors on account of work done had been assigned, of which facts relator had no notice.

Defendant state road commission demurred to relator's petition, contending that the acceptance of the promissory note by relator constituted payment of the check and therefore bars any recovery upon said check. No other pleadings were filed.

As the position stated in respondent's demurrer is a mere denial of relator's allegation "that said note was not taken in payment of said check," we cannot sustain the demurrer on the ground therein stated. We, therefore, proceed to the determination of whether the allegations of the petition constitute realtor a holder in due course and, if so, whether mandamus lies.

Under 46-4-2, Code 1931, a holder in due course is one who has taken an instrument under the following conditions:

"(a) That the instrument is complete and regular upon its face;

(b) That he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact;

(c) That he took it in good faith and for value;

(d) That at the time it was negotiated to him he had no notice of any infirmity in the instrument, or defect in the title of the person negotiating it."

The allegations clearly sustain relator's position under subdivison (a), (b) and (d). Did it take the check "for value?" In *Bank* v. *Haddix*, 97 W. Va. 536, 125 S. E. 362, we held that "merely transferring the proceeds of the note to the transferor's account is not payment of such proceeds, and will not in itself make the bank a holder for value when after nonpayment of the note at maturity the proceeds remain to the

credit of the transferor's account," for such a transaction simply creates the relation of debtor and creditor, and if the instrument is of no value, the bank's obligation is without consideration; but that reason does not prevail where, as in the instant case, the bank has paid out the deposit in its entirety before notice that payment had been stopped. And, in *Bank* v. *Harden*, 83 W. Va. 119, 126, 97 S. E. 600, 602, 6 A. L. R. 240, it is stated (dictum): "The rule is different when something of actual value is parted with by the bank." Under our statute "value" means "valuable consideration" or "consideration sufficient to support a simple contract." 46-17-1; 46-2-2, Official Code. Custom in the commercial and industrial world has long recognized the facility of negotiable instruments as an efficient medium of exchange, and the currency of such paper is effected both by this custom and the protection afforded *bona fide* holders for value under our statutes. Relator, in accepting the check, had the right to believe that on due presentation the instrument would be paid (46-5-2, Official Code), so that paying out its funds to meet the orders drawn by contractors against the amount deposited so as to deplete the fund place relator in a position where its title to the instrument could not be questioned. It had become a holder in due course. Our conclusion is suported by textbook authorities and decisions from other jurisdictions. See 8 C. J., p. 483; Brady on Bank Checks, (2nd Ed. 1926), sec. 72.

In *McAuley* v. *Morris Plan Bank*, 156 S. E. 418 (155 Va. 777) plaintiff McAuley received defendant's check for $1250.00, which plaintiff had on deposit in defendant bank, drawn upon Virginia Trust Company, which check, given to one Major as part payment on an automobile, was deposited by Major in the Richmond Trust Company. The deposit slip read that the Richmond Trust Company had the right to charge back to depositor's account any items for which actual payment was not received. Plaintiff, learning that the automobile had been stolen and that title therefor could not be given by Major, stopped payment on the check, notifying both defendant bank and the Virginia Trust Company. Meanwhile, Richmond Trust Company had honored checks

drawn by Major on his account. On the insistence of the Richmond Trust Company, defendant withdrew its stop payment order and authorized payment of the check, and so notified plaintiff who sued the defendant for the recovery of the amount of the check charged against plaintiff's account. The issue in the case was whether or not the Richmond Trust Company was an innocent holder in due course for value; and the Virginia court, finding that it was, after discussing cases from other jurisdictions, approved the following rule stated in 6 A. L. R. 259, based on the decisions of many courts: "A bank that gets possession of a negotiable instrument by giving the one who presents it credit for the full amount of the proceeds, and honors his checks or drafts to the same amount, or parts with some security, or in some other way makes itself liable for the amount of the deposit outside of the obligation created by the mere deposit, on the faith of the instrument, is the holder of the instrument for value."

In accepting a check drawn upon another bank, a bank acts generally upon its knowledge of and confidence in both the drawer and payee. Relator acted innocently. The road commission was in a position to have ascertained from contractors what disposition had been made of the original check. Presumptively, there was error in the delivery of the original voucher to the contractors; assuredly, the issuance and delivery of a duplicate without first ascertaining if an innocent third party would be affected thereby was not curative of the situation. Realtor's plight is the result of conduct making possible its acceptance of the state's voucher; hence, "when one of two innocent persons—that is, persons each guiltless of an intentional moral wrong—must suffer loss, it must be borne by that one of them who, by his conduct, acts or omissions has rendered the injury possible." *N. & W. Ry. Co.* v. *Perdue*, 40 W. Va. 442; 21 S. E. 755; *Sydenstricker* v. *Tyler*, 108 W. Va. 471, 152 S. E. 318; *Bernard* v. *Bank*, 109 W. Va. 459, 155 S. E. 306.

Relator being an innocent purchaser for value in due course has established a clear legal right to receive payment, and the writ of mandamus is awarded.

*Writ awarded.*