CALEDONIA NATIONAL BANK *v.* A. J. McPHERSON.

(75 A2d 685)

May Term, 1950.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed October 3, 1950.

*Hubert S. Pierce* and *A. Pearley Feen* for the defendant.

*Arthur L. Graves, Frederick G. Mehlman* and *Kyle T. Brown, Jr.,* for the plaintiff.

ADAMS, J. This is an action of contract to recover on a check drawn by the defendant. Trial was by court without a jury. Findings of fact were made and judgment was rendered for the plaintiff. The case is here on defendant's exceptions. The ones relied upon are to the failure to find as requested by defendant's request number 13 and an exception to the judgment.

We first consider the exception to the judgment. The question here is whether it is supported by the findings of fact. *Colby's Executor* v. *Poor et al,* 115 Vt 147, 154, 55 A2d 605, and cases cited.

The findings show the following material facts;—That the defendant, of Holliston, Mass., signed and delivered to one Philo Lang, a regular customer and depositor in the plaintiff bank, a check for $5,000. dated November 29th, 1948, drawn on the Milford National Bank & Trust Co. of Milford, Mass.; that the check was to be used by Lang to purchase cows for the defendant; that on December 1st Lang endorsed the check and deposited it along with other checks and notes in the plaintiff bank and his checking account was credited with the amount thereof; that the plaintiff took the check as a deposit in the usual and ordinary course of business for full value and in good faith without notice of any

infirmity in it or defect in the title of Lang to it; that it was complete and regular on its face; that the balance on Lang's checking account on the morning of December 1st was $3,652.20 and the amount of the deposit credited that day including the check in question was $13,603.10; that on December 1st the plaintiff paid and charged to Lang's checking account 4 checks amounting to $4,641.-50 drawn by him on the account; that on December 2nd the plaintiff paid and charged to Lang's checking account 4 checks amounting to $2,190.12 drawn by him on the account; that on December 3rd the plaintiff paid and charged to Lang's checking account 6 checks amounting to $4,804. drawn by him on the account; that on the same day it paid and charged to the account two other checks drawn by Lang on the account; that on the same day the plaintiff charged back to the account a check of one Gendron which Lang had previously deposited and had credit for on the account, on which payment had been refused, the charge back being $1,547.70; that on December 4th the plaintiff paid and charged to Lang's checking account 7 checks amounting to $1,486.56 drawn by him on the account; that Lang died very suddenly shortly after noon on December 3rd; that the defendant stopped payment on the check in question at the bank in Milford when he had notice of Lang's death and it was protested on December 6th and the plaintiff received notice on December 7th that it had been protested because payment had been stopped; that on December 9th the plaintiff paid and charged to Lang's checking account a check in the amount of $3.98 drawn by him on the account; that after the foregoing transactions the balance on the checking account was $521.19 and the plaintiff used this balance to apply on the $5,000. check in question which had then been returned to it unpaid. The judgment here excepted to is for the amount of the check less the credit thereon of the $521.19.

 Money deposited in a bank without special arrangement becomes the property of the bank and the depositor becomes the creditor of the bank to the amount of the deposit. *State* v. *Clement National Bank,* 84 Vt 167, 180, 78 A 944, Ann Cas 1912D 22. It is a fundamental rule of banking law that in case of a general deposit of money in a bank, the moment the money is deposited it becomes the property of the bank and the bank and the depositor assume the relation of debtor and creditor. The same rule obtains in the case of deposits of checks, drafts and promissory notes, wherever, under

the circumstances of the case, the bank becomes the owner of the commercial paper and the customer acquires the unconditional right to draw for the proceeds. 7 Am Jur Banks, Par. 444.

According to the majority of cases, where there is no definite understanding between the depositor and the bank as to the ownership of the paper, but it is endorsed by an unrestricted endorsement and deposited in the usual course of business with the bank, which gives credit to the depositor for the amount thereof with the right to draw thereon, the title, prima facie, passes to the bank. 7 Am Jur Banks, Par. 452; 9 CJS Banks & Banking, Par. 221. The right of the bank to charge back the dishonored paper is in no wise inconsistent with the rule that it acquires title by such deposit. 7 Am Jur Banks, Par. 453; 9 CJS Banks & Banking, Par. 281. This Court has so held. *Walker & Brock* v. *Ranlett Co. et al,* 89 Vt 71, 74, 76, 93 A 1054. See also *Douglass* v. *Federal Reserve Bank,* 271 US 489, 46 S Ct 554, 70 L Ed 1051. The exercise of such right to charge back is no more than enforcing the depositor's liability as endorser of the dishonored paper. *Bassett* v. *Mechanics Bank,* 117 Conn 407, 168 A 12; Annotations 11 ALR 1067; 16 ALR 1084; 42 ALR 501; 68 ALR 734; 99 ALR 495.

The defendant claims that the check in question did not represent money or funds in the possession of the plaintiff until the check was certified or accepted by the bank upon which it was drawn. He bases this theory upon V. S. 47, § 5637, a part of the Uniform Negotiable Instruments Act. It provides, "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check." The argument is ingenious but not convincing. If it were so no bank could safely take a deposit of checks and the depositor have funds against which the bank would allow checks to be drawn until the bank had forwarded the checks to be accepted or certified or had received notice that they had been paid by the bank upon which they were drawn unless the depositary bank in giving general credit for the checks relied solely upon the financial responsibility of the depositor-endorser. The section has to do with the relationship between the depositary bank and the bank upon which the check is drawn and not between the bank and the depositor or the bank and the drawer of the check. Here the suit is against the drawer of the check to enforce his obligation as the maker thereof. It is not a suit

against the bank upon which the check was drawn which is the subject matter with which the section of the statute deals. In revoking or countermanding a check the drawer takes upon himself all the consequences of his act. 7 Am Jur Banks, Par. 602.

This section of the Uniform Act has no application here and is not inconsistent with the fact that the plaintiff acquired title to the check when it received it as a deposit in the manner found by the court. What is now V. S. 47, § 5637 was in force when *Walker & Brock* v. *Ranlett Co. et al, supra,* was decided. Paraphrasing the discussion of this section of the Uniform Act in 7 Am Jur Banks, Pars. 532 and 545 ; a majority of the courts held prior to the adoption of the Act that a check did not operate as an assignment of the drawer's funds as there was no privity of contract between the bank and the holder of the check until it was certified or accepted. The minority view was that the drawing and delivery of a check was in effect an assignment to the holder of the check of so much of the fund as the check called for. The act brought the law into harmony with the majority view and since its adoption the remedy of the holder is against the drawer or endorsers of the check as it was according to the majority view before its adoption. See also CJS Banks & Banking, Par. 366. Here the plaintiff is proceeding against the drawer as it may do under the act.

It remains to determine from the findings if the plaintiff was a holder for value as the defendant makes no claim but what all other requirements of the statute pertaining to the plaintiff being a holder in due course are satisfied by the findings. The findings show that when Lang deposited the check the plaintiff gave his checking account credit for the full amount of the check.

When money is deposited in a bank the legal effect of the transaction is that of a loan to the bank upon the promise and obligation, usually implied by law, to pay or repay the amount deposited usually on demand and the same rule applies in the case of deposits of checks, drafts and promissory notes. A general bank deposit, however, is different from the ordinary debt in that from its very nature it is constantly subject to check or is usually, if not always, as a practical matter and in the absence of some contract to the contrary payable on demand. 7 Am Jur Banks, Par. 444.

There is authority holding that where checks are deposited in a bank and general credit given therefor the bank is a holder for

value. This is on the theory that title passed to the bank; that the relationship of debtor and creditor arose between the depositor and the bank; that the deposit and transfer of the check by the depositor was in consideration of an implied promise by the bank to repay the amount of the deposit in whole or in fractional parts on the request of the depositor by his check or draft and that such implied agreement to pay when and as requested an amount equal to the credit given makes the bank a holder for value as value is declared by the Negotiable Instruments Act to be "any consideration sufficient to support a simple contract." See V. S. 47, § 5470. *Blacher* v. *National Bank of Baltimore,* 151 Md 514, 135 A 383, 49 ALR 1366. All of the foregoing criteria are present in the instant case.

However, we need not, on the findings, use that theory as the basis for deciding that the plaintiff is a holder for value of the check in question. A bank that takes a negotiable instrument, i.e. a check, as a general deposit and gives the depositor credit for the full amount of the proceeds and honors his checks against the credit created by that deposit for the full amount thereof is a holder of the instrument for value. 8 Am Jur, Bills & Notes, Par. 442; Annotations, 6 ALR·259; 24 ALR 902; 60 ALR 248; 80 ALR 1064; *Real Estate-Land Title & Trust Co.* v. *Butler,* 296 Pa 54, 145·A 689; *American Fruit Growers* v. *Chase National Bank,* 30 F2d 936; *National Bank of Detroit* v. *Sachs,* 314 Ill App 570, 41 NE2d 998; *Bath National Bank* v. *Sonnenstrahl,* 249 NY 391, 164 NE 327; *Elk Valley Bank* v. *State Road Commission,* 111 W Va 527, 162 SE 889, 80 ALR 1061.

Here the plaintiff has honored and paid checks of the depositor, Lang, from the credit to his account arising from the deposit of the defendant's check, to an amount equal to that which it seeks to recover. The defendant says, however, that the plaintiff paid part of the checks after Lang's death and notice thereof so it should not have the benefit of the payment of those checks. It is well settled under the Uniform Negotiable Instruments Act that the death of the drawer of a check, when it is known to the drawee bank, countermands or revokes its authority to pay the check unless it has been certified or accepted theretofore by the drawee bank. If, though, the check is paid by the bank before it has notice or knowledge of the death of the drawer, the payment will be held valid. 7 Am Jur Banks, Par. 606; *Sneider, Admx.* v. *Bank of Italy,* 184 Cal 595, 194 P 1021, 12 ALR 993; *Weiand's Admr.* v. *State National Bank.*

23 Ky Law Rep 1517, 65 SW 617, 66 SW 26, 56 LRA 178; *Glennan* v. *Rochester Trust & Safe Deposit Co.*, 209 NY 12, 102 NE 537, 52 LRANS 302, Ann Cas 1915 A, 441; *Brennan* v. *Merchants' & Manufacturers' Bank*, 62 Mich 343, 28 NW 881; 5 RCL. Checks, Par. 50; Note Ann. Cases, 1915A, 443; Anno. 43 LRANS 111.

In connection with notice to the plaintiff and knowledge of Lang's death, the defendant calls our attention to finding 13 which is as follows:— "That shortly after noon on December 3rd said Lang died very suddenly, and Billie Lang asked Allen to take said cows back and return the checks that Philo Lang had given Allen for the cows." There is nothing in this finding that establishes the fact that the plaintiff had notice or knowledge on December 3rd or at any time thereafter of Lang's death. There is nothing in the other findings that establishes such fact. It is apparent that the court treated this matter as if the burden of proof was on the defendant. Since the court's treatment was not questioned by the defendant, it has become the law of the case and the point is unnecessary for us to decide. It, therefore, follows that the payment by the plaintiff of Lang's checks on December 3rd, 4th and 9th and the charging of the same to his checking account was valid. This being so, it is unnecessary to determine what, if any, authority the plaintiff had by virtue of V. S. 47, § 5522 to pay the checks. This statute has to do with paying checks by a depositary within thirty days after the death of the maker. It should be observed that this section is included in the chapter of V. S. entitled "Negotiable Instruments Act". It was in our statutes before the Uniform Act was adopted and was no part of that act.

The plaintiff was a holder in due course for value of the defendant's check, certainly, to the extent that it seeks to recover thereon of the defendant in this action. The judgment is supported by the findings.

The defendant conceded in oral argument that if the plaintiff was a holder in due course for value his request, number 13, for a finding that the defendant received no cows for his check was immaterial and it was not error for the court to refuse it. We agree.

This disposes of all exceptions relied upon by the defendant. There is no error.

*Judgment affirmed.*